## WILLIAM G. HARRISON *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.—*December* 1843.

The *Mayor and City Council of Baltimore* by their charter, have full power to pass all laws and ordinances necessary to preserve the health of the city, prevent and remove nuisances, and prevent the introduction of contagious diseases within the city, and within three miles of the same.

That act clothed the corporate authorities *within the specified limits*, with all the legislative power which the General Assembly could have exerted, and of the degree of necessity for such municipal legislation, the M. and C. C. of B. were the exclusive judges; the means and manner contributory to the end in view, were committed to their sound discretion.

The corporation might impose penalties, or cause the vessel and all persons on board to be taken possession of, and controlled until their disinfection was effected, and impose on the captain, owner or consignee, reimbursement of all expenses incurred, or they might adopt at the same time both those remedies.

Where testimony has been offered, legally sufficient to warrant the jury in finding certain facts enumerated in the plaintiff's prayer, which gave him a right of action, he may upon the hypothesis, that the jury believe the evidence in the cause, and the facts enumerated, require the court to instruct them that he is entitled to recover to the extent of such right.

In an action to recover the expenses incurred by the *Mayor and City Council of Baltimore*, in disinfecting and purifying a vessel, persons, and baggage, on board her at the time of her arrival, from the infection of the small pox, the defendant cannot require the court to instruct the jury, that the recovery must be limited to the amount of expenses absolutely necessary to preserve the health of the city, or to prevent the introduction of the small pox. By such an instruction the rights of the plaintiff would have been unreasonably and illegally restricted.

If the Health officer of the city, on whom the duty of disinfection is imposed by the ordinances of the corporation, in causing expenses to be incurred, acted *bona fida* within the limits of a sound discretion and with reasonable

skill and judgment in this discharge of his official duties, the reasonable expenses thus incurred by him, must be paid by the captain, owner or consignee of the disinfected vessel as declared by the ordinances of the city on such subjects.

The Health officer in his disposition of persons on board of an infected ship, under the ordinances of the city, must send the persons laboring under the infectious disease to the hospital, and may also send those on board the same vessel, liable to be affected by it, to the hospital, if in his opinion such course be necesary to prevent the spread of the disease.

And that officer, acting with reasonable skill and judgment, and with a sound and honest discretion in relation to persons not apparently afflicted with the disease, renders the owner, master or consignee, also, liable for the reasonable expenses incurred as in other cases.

Where the county court undertakes of its own motion to add a qualification to a prayer granted at the request of a party, the qualification must be consistent with the original prayer, and not leave it doubtful or difficult to determine what was the scope or design of the entire instruction.

Upon motion of the defendant, the county court instructed the jury, "that if they find the expenses incurred and claimed in this action were not necessary to preserve the health of the city, and not necessary to prevent the introduction of the small pox by or through the instrumentality of the vessel, the persons, baggage or articles on board her," then the plaintiff cannot recover; and then added, "that the recovery must be limited to such amount of expenses as in the *opinion of the Health officer* was necessary to disinfect the vessel, cargo and passengers of said disease, and to prevent their propagating the same. HELD: that this was erroneous, because difficult to reconcile the two parts of the instruction so given, or to discover what was the instruction the court designed to give.

APPEAL from *Baltimore* County Court.

This was an action of *assumpsit*, commenced on the 1st January 1841, in which the plaintiff, the appellees, averred that the defendant in this action on, &c., at, &c., was indebted to plaintiffs in a large sum of money, to wit, the sum of one thousand dollars, lawful money, for so much money by the plaintiffs before that time paid, laid out and expended for the defendant, as consignee of the ship *Ellen Brooks*, at his special instance and request; and being so indebted, &c.

The defendant pleaded *non-assumpsit*, on which plea the issue was made up.

At the trial of this cause, the plaintiff to support the issue on its part, offered in evidence and read to the jury ordinance No. 12, entitled an ordinance for the due performance of quar-

antine at the port of *Baltimore.* The plaintiff further proved by *Dr. Martin,* that he was the health officer of the port of *Baltimore,* duly appointed in the year 1840, and at the time the *Ellen Brooks* arrived at *Baltimore,* and during all that year; that the ship *Ellen Brooks* arrived at the port of *Baltimore* about the 20th May 1840; that immediately on her arrival, and coming to at the quarantine ground, he the said *Dr. Martin,* as health officer, went on board the said *Ellen Brooks,* and there found a number of passengers, say about one hundred and eigty; that some of the passengers were then afflicted with the small pox, and some of them with typhus or jail fever, and that they continued to sicken after the arrival of the vessel almost daily, some with one disease, some with the other; that the passengers were most of them Irish emigrants, who were living almost entirely on potatoes; that he, the said *Dr. Martin,* directed the said vessel to remain at the quarantine ground, which is within the limits of the city of *Baltimore,* and that the persons on board of her should not land, or have any communication with the shore; that he, the said *Dr. Martin,* directed about twenty-four of the said passengers, being all of them who were sick, to be sent to the small pox hospital in the city of *Baltimore,* about one-half of whom, according to his recollection, when sent to the small pox hospital, were afflicted with the small pox disease, and one-half with the typhus fever; that he, the said *Dr. Martin,* considering that the passengers who remained on board the said vessel, ought to be furnished with fresh provisions, procured such provisions and supplied the said passengers with the same, by whom they were consumed; that the bill headed—

"*Ship Ellen Brooks, William G. Harrison, consignee, to the Mayor and City Council of Baltimore, Dr.*

For the following articles furnished, and expenses incurred, in disinfecting and purifying said vessel, when at quarantine, in the months of May and June 1840, on her arrival from *Liverpool,* viz:

| | | | | | |
|---|---|---|---|---|---|
| 1840, June 12, | | Paid John Muckelroy for beef and vegetables, - - | | $35 | 14 |
| " | 14, | " Philip Fell, for provisions, - | | 6 | 00 |
| " | " | " D. Graves & Son, for 100 herrings, | | 1 | 00 |
| " | " | " Mr. McAliston, for groceries, | | 9 | 00 |
| " | 15, | " for lime to whitewash ship, - | | 1 | 75 |
| " | " | " cartage sundry times, - - | | 1 | 50 |
| " | " | " boat hire, - - - - | | 1 | 25 |
| " | " | " John McWilliams, his bill for provisions furnished ship, - | | 11 | 76 |
| " | " | " hack hire going to and from hospital, | 2 | | 00 |
| " | " | " for brooms and brushes for ships use | 1 | | 00 |
| " | " | " Thos. Evans, for conveying 24 passengers to the hospital, | | 24 | 00 |
| " | " | " Mr. Bruehl, for bread, - - | | 14 | 00 |

$108 40

Sworn to by *Joseph Martin*, on this 30th day of November 1840, before me,                          SAMUEL BRADY, *Mayor.*

Received November 30th, 1840, of the commissioners of health, the amount of the above account in full.

JOSEPH MARTIN.

Shows the amount in full expended by him, in the purchase of the aforesaid provisions, as well as the other expenditures incurred by him in relation to the said vessel, and the time of payment of the said bill by him; that in the opinion and judgment of the said *Dr. Martin,* the said expenditures were necessary, reasonable and proper; and that it was necessary in his judgment and opinion, to the preservation of the health of the said passengers, who remained on board the said vessel, that they should be supplied with fresh provisions; that he considered it necessary to prevent the spread of the typhus fever among the said passengers; that they should be furnished with fresh provisions; that his object chiefly in furnishing these provisions, was to prevent the spread of the typhus fever; but that in his opinion and judgment there was still danger that the small pox might break out among the passengers left on

board, after the removal of the persons who were sent as afore-
said, to the small pox hospital, and he considered it necessary
to prevent the propagation of the small pox among the said
passengers who remained on board the said vessel, to furnish
them with fresh provisions, and that he would have furnished
said supplies if there had been no typhus; that he, the said
*Dr. Martin,* considered it his duty, as health officer, to send
the aforesaid persons to the hospital, and to furnish those who
remained on board the said vessel with fresh provisions; that
supposing that the master of the vessel might furnish the said
provisions at a less expense than he could, he directed the
master of the *Ellen Brooks,* to furnish the passengers remain-
ing on board the said vessel with fresh provisions before wit-
ness ordered said supplies; that the master refused to do so,
saying that he had lost enough already; that he, in company
with the Mayor, went to see defendant, believing him to be
consignee, and on his way to defendant's counting room, he
met the defendant on *Pratt* street in the city of *Baltimore,* and
spoke to him of the necessity of furnishing fresh provisions
for the said passengers; that he was then accompanied by *Shep-
pard C. Leakin,* the then Mayor of the city of *Baltimore;* that
the defendant then told him to furnish the necessary supplies,
and that he would be responsible for them; that in this inter-
view he explained to the defendant, that he was the health
officer, and that the passengers were detained on board by his
authority; that in this conversation he spoke to the defendant
only in reference to the expenses he was incurring, and not in
reference to the bill of the small pox hospital; that he, the
said *Dr. Martin,* would have supplied the said provisions, with
or without the consent of the defendant, or any one else, and
that his object in calling on the defendant was, to let those
interested know what he was doing, was necessary to be done,
and that he considered it his duty, as health officer, to furnish
these supplies, and that he called on the defendant to give him
an opportunity to furnish the provisions, if he could do so at
a cheaper rate than he, *Dr. Martin* could; that when he saw
the defendant, nearly all the passengers who were sent to the

small pox hospital, had been removed to that place; that the said *Dr. Martin* considered that the change in the provisions so made by him, as necessary to prevent the spread of the small pox among the passengers, remaining at that time on board the said vessel; that he directed that none of the passengers remaining on board the said vessel, should land; that in the opinion and judgment of the said *Dr. Martin,* while the said vessel remained at the quarantine ground, there was no danger, that the contagion of the small pox would be introduced into the city of *Baltimore,* unless some of the passengers went on shore, or had intercourse with persons from the shore; that he purchased lime, and with it white-washed the *Ellen Brooks,* and fumigated the vessel, and employed no disinfecting agents with respect to the clothes and other articles on board the said vessel, except soap and water and ventilation. Witness stated that he considered it necessary to send the typhus patients from on board the vessel, as the state of the ship very much increased their danger, and could send them no where else than to the hospital, without danger of communicating the small pox. The plaintiff further proved by one *Jones,* that he was a resident student, and had charge of the city contagion hospital in 1840; that the persons named in the bill headed—

"*Ship Ellen Brooks, to the City Contagion Hospital, Dr.*

To board, medical attention, medicines, nursing, washing, &c. &c., of the following persons, (vide *Dr. Martin's* order,) viz:

Date of *Adm'n.*      *Names.*      Date of dis'ge. *No. days.*

May 27,   Cornelius Simpson,   June 24,     29, &c., enumerating 26 persons, and making in all 694 days, at $1 per day, $694.   Approved, *S. C. Leakin,* Mayor.

J. H. MILLER, *Pres. of Faculty.*"

Received payment of the commissioners of health, as per receipt books.   *August 26th,* 1840.        JOEL JONES.

I do hereby certify, that the individuals named in this bill were sent by me to the small pox hospital, were sent from the ship *Ellen Brooks,* as necessary to the purification of said ship. *August 25th,* 1840.        Jos. MARTIN, *Health Officer.*

Were received in that hospital according to contract made with the city of *Baltimore* to receive all patients sent there by the city, and that they were received in consequence of an order from *Dr. Martin,* the health officer; that about two-thirds of them had small pox, one case of syphilus, who after arriving at the hospital was attacked with small pox, and the rest had typhus fever; that they were kept at the hospital during the periods mentioned in the said paper, and that the cost of each day for each patient, charged by the small pox hospital, was $1.00 for board, medical treatment, &c.; that the *Hibernian Society* furnished them with clothes; that after receiving an order from *Dr. Martin,* and on the 2nd or 3rd June, he waited on the captain of the vessel who referred him to the defendant, who when applied to, said that the bill of the small pox hospital would be paid, or that he would see it paid, and in this interview the defendant requested the witness to send the patients out of the hospital as speedily as possible and not to keep them there unnecessarily; that about two weeks afterwards, and before the said persons had been removed from the hospital, he again called on defendant, who said that he has made some arrangement with *Captain Conkling,* who had made an agreement with him to refer to arbitration the question as to who was responsible for the said bill, and that the patients in the hospital were discharged as soon as they could with safety be, and that the charges in the said bill are usual and customary. The plaintiff further proved, that the mayor and city council of *Baltimore* paid, before the bringing of this suit, the amounts of *Dr. Martin's* bill, and that of the small pox hospital. The defendant then offered in evidence the charter party entered into in *Liverpool,* and in pursuance of which the voyage from that port to *Baltimore* was performed, and the said passengers who were removed to the small pox hospital were transported.

The charter party stipulated, that the vessel "with all convenient speed be made ready, and receive and take on board a full cargo of lawful goods and merchandize, such cargo not to exceed six hundred tons weight, and of which not more than

four hundred tons dead weight articles, with such passengers as may offer, *all expenses on the same being paid by the charterers,*" &c.; "and being so loaded shall therewith proceed to *Baltimore,* or so near thereunto as she may safely get, and deliver the same, &c., and so end the voyage," &c. The execution of which was admitted.

The plaintiff further proved by *Jones,* that in his opinion as a physician, the disease of small pox may break out after it is imbibed in six days, and may not until fourteen, and that the average is nine days, and that it may last in the constitution of the patient two months. The defendant further proved by *William H. Conkling,* that upon the arrival of the *Ellen Brooks* at *Baltimore* he entered that portion of the cargo of the said vessel which consisted of salt, and which belonged to and was shipped on board the said vessel at *Liverpool* by *Ingleby & Browne,* the charterers; that this portion of the cargo was consigned to order, and the bills of lading for it had been sent to the said *William H. Conkling* by a *Mr. Baldwin* of *Philadelphia,* to whom *Ingleby & Browne* had transmitted them, the said *Conkling* deriving all his authority to act from *Baldwin;* that when he applied to have the salt landed the captain of the vessel refused to suffer it to be landed until he was secured the full amount of his freight; that he, the said *William H. Conkling,* at the request of the master and the defendant, undertook to collect the freight payable by the consignees of the other portions of the cargo; did in fact collect it, and paid to the defendant the entire freight under the charter party; that he had no other connexion with the vessel or cargo than as above stated.

Upon cross examination the said *William H. Conkling* stated, that before the *Ellen Brooks* arrived at *Baltimore,* he heard the defendant say, that he would want to sell or freight her upon her arrival, and that he had acted on former occasions as the agent in *Baltimore* of *Mr. Sheppard* of *New Orleans,* the owner of the *Ellen Brooks,* and had been the consignee on former voyages of that vessel, and that he acted as consignee of the vessel when she was in *Baltimore* at the time of incurring these expenses. The defendant further proved, that the *Ellen*

*Brooks* is an *American* vessel, owned by *Mr. Sheppard* of *New Orleans,* and was entered at the custom house at the port of *Baltimore,* upon the oath of the master of the vessel, as to the character of the vessel. The defendant also read to the jury ordinance No. 11, entitled "An ordinance to preserve the health of the city of *Baltimore.*" The plaintiff then offered the two following prayers and instructions to the jury:

1. If the jury believe from the evidence in the cause, that the ship *Ellen Brooks* came to at the quarantine ground of the port of *Baltimore,* with persons on board afflicted with the small pox, or varioloid or both diseases, at the time spoken of in the testimony, and that the expenses charged in the several bills referred to in the testimony, were incurred in the process of disinfecting the said ship, and in the measures directed to be taken in reference to the officers, crew and passengers, to disinfect them, and to prevent their propagating the said disease, by the officer of the city of *Baltimore,* authorised to act on such occasions, to wit, the health officer or his assistant; and if they shall believe, that the said expenses have been paid to the parties incurring them, in the first instance by the plaintiffs, and that the defendant was the consignee of the said ship at the time referred to, then the plaintiff has a right to recover from defendant, so much of said expenses as are reasonable and fair of their kind."

2. If the jury believe from the evidence, the facts set forth in the first prayer, that the plaintiffs have a right to recover, notwithstanding the charter party exhibited in evidence. To the granting of which prayers, or either of them, the defendant objected, but the court (Purviance, A. J.,) overruled their objection, and granted each of the said prayers. The defendant excepted.

2ND Exception. The evidence having been given as stated in the defendant's first bill of exceptions, the defendant prayed the court to instruct the jury as follows:

1. If the jury find the expenses incurred and claimed in this action, were not necessary to preserve the health of the city of *Baltimore,* and were not necessary to prevent the introduction

of small pox into the said city, by or through the instrumentality of the *Ellen Brooks*, the persons, baggage or articles on board of her, then the plaintiff cannot recover, and the recovery must be limited to the amount of expenses absolutely necessary to preserve the health of the city, or to prevent the introduction of small pox.

2. That under the true construction of the ordinance, the expenses which can be recovered, are those incurred in disinfecting and purifying the *Ellen Brooks*, the persons, baggage and articles on board of her at the time of her arrival at the port of *Baltimore*, from the infection of the small pox, and the jury can render a verdict only for such amounts as were properly incurred, in such disinfection and purification from the infection of small pox, of the said vessel, persons, baggage and other articles.

But the court (Purviance, A. J.,) refused to grant the said prayers, or either of them, as they stand, but did grant them with the following modification, and instructed the jury as follows:

The qualification of the said first prayer of the defendant, was, to strike out all of it, after the word "recovery," and insert, "must be limited to such amount of expenses as in the opinion of the health officer was necessary to disinfect the vessel, cargo and passengers of the said disease, and to prevent their propagating the same."

And the qualification of the second prayer was, to strike out all of it, after the word "amounts," and insert the following—"as in the opinion of the health officer were necessary to disinfect the vessel, cargo and passengers of the said disease, and to prevent their propagating the same."

To which refusal to grant the said prayers, and each of them as they were presented, and to which granting of the said prayers, and each of them with the said qualifications, the defendant excepted.

3rd Exception. The evidence having been given as stated in the defendant's first bill of exceptions, the defendant then prayed the court as follows:

35    v.1

3.. That under the true construction of the ordinance in question, the health officer had no power to send to the small pox hospital, any but those persons who, when sent, were affected with the small pox or varioloid disease, and that no expense incurred from the sending of any other persons, can be recovered in this action.

4. That if the jury find, that the health officer required the captain of the *Ellen Brooks* to furnish fresh provisions for such persons as remained on board the *Ellen Brooks*, and were not removed to the small pox hospital, and did this with a view to prevent the spread of disease, then the remedy for the violation of such requisition, if any, was under the 8th section of the ordinance, against the captain of this vessel, and the fact that the health officer did furnish the provisions in question, does not authorise the recovery of the amount so furnished in this action.

5. That the expense incurred and paid by the health officer, under the 7th section of the ordinance, could only be collected from the party charged by him, and if such charge was made in this case in the first instance, against the captain of the *Ellen Brooks*, then it ought to have been collected from him, and there having been no effort made to recover this amount from the captain, there was no obligation on the part of the city to pay it, and such payment was therefore voluntary, and does not entitle the city to recover in this action.

6. That the Mayor and City Council of *Baltimore*, have full power to provide by ordinance for the preservation of the health of the city, and to prevent the introduction of contagious diseases, but this power does not confer any right on the corporation to impose upon the owner, captain or consignee of a vessel arriving at the port of *Baltimore*, the expense of curing all passengers arriving in their vessels at that port, nor the expense of providing them with such provisions as the health officer of that port may order for their use, in a case where the charterers of the vessel have undertaken to provide for all expenses of passengers, and that there can be no recovery in this action, for the amount paid for curing the passengers in

the small pox hospital, or the amount paid for furnishing provisions by the health officer.

7. That under the true construction of the ordinance, the expenses which can be recovered from the owner, consignee or master, are confined to the disinfecting and purifying the vessel and baggage and articles on board of the vessel, and does not extend to the support and cure of the passengers, who were removed to the small pox hospital, nor to the provisions furnished by the health officer for the use of the passengers who remained on board of the vessel.

8. If the jury find, that the *Ellen Brooks* was chartered in the manner given in evidence, at *Liverpool*, to perform a voyage to *Baltimore*, and that the charterers were to pay all expenses of passengers; and further find, that all expenses claimed in this action, arose from the diseases among the passengers on board the said vessel; and further find, that the defendant in this action had no agency in effecting the said charter party, and his control over the said vessel, as consignee, was to take effect from and after the full performance of all the stipulations in the said charter party, and performances of the said voyage, then the defendant is not responsible in this action.

9. If the jury find, that the defendant in this action was the ship's husband, rather than the consignee, and acted as ship's husband, then he is not responsible in this action.

10. If the jury find, that some of the passengers who were removed by the order of the health officer to the small pox hospital, were afflicted with small pox, and some with typhus, or some other diseases different from small pox or the varioloid disease, there can be no recovery in this action for the expense of removal, board and medical treatment, at the said hospital, incurred on account of the said passengers who were not afflicted with the small pox, unless the jury find, that such expenses were necessary to disinfect and purify the said passengers from the infection of the small pox.

11. If the jury find, that the passengers who remained on board said vessel were not sick, and find that the health officer furnished them with fresh provisions, there can be no recovery

on account of the expense of such provisions, unless the jury find, that such expense was necessary to disinfect and purify them from the infection of the small pox.

12. There can be no recovery in this action, for any expense incurred on account of any passenger not afflicted at the time of incurring such expense, with the small pox, or varioloid disease, unless the jury find that such expense was necessary to prevent such passenger from being infected with the small pox, and that no expense incurred exclusively in curing any passenger of any disease, different from the small pox or varioloid disease, or in preventing such other disease, can be recovered in this action.

But the plaintiff having objected to the same, the court (PURVIANCE, A. J.,) rejected all and each of them, and refused to grant any one of them, to which refusal to grant any of them, and to which rejection of all and each of them, the defendant excepted.

The verdict and judgment being against the defendant, he appealed to this court.

The cause was argued before STEPHEN, ARCHER, DORSEY, and CHAMBERS, J.

By GEO. M. GILL and G. L. DULANY for the appellant, and By MARSHALL for the appellees.

DORSEY, J., delivered the opinion of this court.

By the act of the General Assembly of *Maryland*, incorporating the *Mayor and City Council of Baltimore*, it is enacted, "that the corporation aforesaid shall have full power and authority to enact and pass all laws and ordinances necessary to preserve the health of the city, prevent and remove nuisances; to prevent the introduction of contagious diseases within the city, and within three miles of the same." The transfer of this salutary and essential power is given in terms as explicit and comprehensive as could have been used for such a purpose. To accomplish, within the specified territorial limits, the objects enumerated, the corporate authorities were clothed with all the

legislative powers which the General Assembly could have exerted. Of the degree of necessity for such municipal legislation, the *Mayor and City Council of Baltimore* were the exclusive judges. To their sound discretion was committed the selection of the means, and manner (contributory to the end) of exercising the powers, which they might deem requisite to the accomplishment of the objects of which they were made the guardians. "To prevent the introduction of contagious diseases within the city, and within three miles of the same," they might impose heavy penalties on the captain, owner or consignee of any ship or other vessel entering the port of *Baltimore*, on board of which the small pox or other contagious disease might prevail; or they might seek the accomplishment of their object by causing the vessel and all persons on board to be taken possession of and controlled until their purification and disinfection were effected, and impose on the captain, owner or consignee the payment or re-imbursement of all the expenses incurred by such proceedings; or they might adopt at the same time both the suggested remedies, if for the successful and faithful execution of their powers, they deemed it necessary to do so.

With this view of their powers, let us see what laws or ordinances have been passed by the *Mayor and City Council of Baltimore* in relation to the case now before us. By No. 12 of the revised ordinances, page 47, they have provided for the appointment of a "health officer," and prescribed his duties and powers; and by the sixth section thereof, it is enacted, "that the health officer or his assistant shall visit all vessels that may come to at the quarantine ground, as directed in the fifth section of this ordinance, as soon as practicable, in daylight, after the knowledge of such fact shall have been, by any means, obtained by him; and said officer is hereby authorised and directed to send all persons afflicted with the small pox or varioloid disease, who may be found on board such vessel, to the small pox hospital, until a receptacle for small pox patients be provided at the *Lazaratto;* to take or direct such measures in regard to the officers, crew and passengers, as in

his opinion may be necessary to disinfect them and to prevent their propagating the disease." And by the seventh section of the ordinance, it is enacted, "that the expenses which may be incurred in the disinfecting and purifying of such vessels, persons, baggage or other articles from the infection of small pox, as provided for in the sixth section of this ordinance, shall be done at the proper costs and charges of the commander, captain, owner or consignee of the vessel infected; and such part thereof as it may be necessary for the health officer to incur in the first instance, shall be charged to the commander, captain, owner or consignee, or either of them, in the discretion of the health officer, and collected by him, but if it cannot be so collected, the amount which he shall have necessarily expended, for the purpose aforesaid, shall be refunded or repaid by the register of the city, with the approbation of the mayor."

With this outline of the powers and duties of the *Mayor and City Council of Baltimore* and the health officer, we now proceed to examine the several prayers and instructions given and refused by the court to the jury, which by the bills of exceptions taken in the cause are brought up to be reviewed in this court.

In granting the plaintiff's first prayer in the first bill of exceptions, and overruling the defendant's objection thereto, we think the county court committed no error. Of all the facts submitted in that prayer to the finding of the jury, there had been testimony offered, legally sufficient, to have warranted such finding. And if those facts were found, the plaintiff's right to recover to the extent claimed by his prayer, followed as the natural and legal consequence.

We think the court below were also right in granting the plaintiff's second prayer and overruling the objection made to it by the defendant. The *Mayor and City Council of Baltimore* had the power, as they have done, to visit the penalty for the introduction of a contagious disorder within the limits prescribed by the Act of Assembly, on the owner, the captain, or consignee of the vessel. Of the charterer of the vessel, they

are not presumed to have had knowledge. And if they had, what has he to do with a contagious disorder prevailing amongst the crew? And even conceding he were responsible therefor, could the salutary power, vested in the corporation in this respect, be effectuated, by making him only answerable, who, perhaps never was and never would be within the reach of the process of our judicial tribunals, and might be a resident, if any settled residence he had, of the most remote portion of the commercial world.

We concur with the county court in the propriety of its rejection of the appellant's two prayers in his second bill of exceptions. The first part of the first prayer having been granted. Whether the court were right or wrong in doing so on this appeal, it is unnecessary for us to inquire. But the second part of that prayer, and which was refused by the court, was, that the recovery of the plaintiffs "must be limited to the amount of expenses absolutely necessary to preserve the health of the city, or to prevent the introduction of small pox." By granting this instruction the rights of the plaintiffs would have been unreasonably and illegally restricted. It limited the right of recovery, not only to expenses, incurred in the soundest exercise of economical discretion, and of the greatest professional skill and judgment, by the health officer, but it deprived them of the right of recovery thereof, if the jury, judging perhaps from results and circumstances, occuring after the authority of the health officer had been thus exerted, should be of opinion, that the expenses incurred, had not been "absolutely necessary to preserve the health of the city, or to prevent the introduction of small pox." The right of the plaintiffs to recover is dependant on no such occurrences, is confined to no such restrictions. If the health officer, in causing these expenses to be incurred, acted *bona fide* within the limits of a sound discretion, and with reasonable skill and judgment, in this discharge of his official duties, the reasonable expenses thus incurred must be paid by the defendant. But we think the court below erred in instructing the jury according to their qualification of the defendant's first prayer. The portion of the prayer

which was *retained by the county court* and given to the jury, was, that "if the jury find the expenses incurred and claimed in this action, were not necessary to preserve the health of the city of *Baltimore*, and were not necessary to prevent the introduction of small pox into the said city, by or through the instrumentality of the *Ellen Brooks*, the persons, baggage, or articles on board of her, then the plaintiff cannot recover." With this part of the instruction the defendant surely had no reason to be dissatisfied. It submits, exclusively to the finding of the jury, the question as to the necessity of the expenditures made. Of that necessity they were created the sole judges. But to this instruction the court appended the following modification, viz: "and the recovery must be limited to such amount of expenses as in the opinion of the health officer was necessary to disinfect the vessel, cargo and passengers, of the said disease, and to prevent their propagating the same." Uniting that portion of the prayer granted, with the court's modification thereof, we must confess we are much at a loss how to reconcile them, or to discover what was the instruction which the court designed to give to the jury. Viewing them separately, the meaning of each is obvious enough, but their consistency is not so apparent. By the modification, the jury were told that the plaintiffs' recovery must be limited to such "amount of expenses as in the opinion of the health officer was necessary to disinfect the vessel, cargo and passengers of the said disease, and to prevent their propagating the same." Thus making the opinion of the health officer the sole ground upon which the verdict of the jury must be formed; and, in effect, withdrawing from their consideration the expenses which had actually been incurred and the question previously submitted to them, as to the necessity, in point of fact, for incurring those expenditures. And, in truth, instructing the jury to find a verdict for such amount of expenses as in the opinion of the health officer was necessary, although the jury might believe that the health officer, in forming his opinion, had acted *mala fide*, had given countenance to the grossest extravagance, and exorbitance of charges, and had shewn himself destitute of all

professional skill and judgment, and wholly incompetent to make the estimates requisite to the formation of a correct opinion upon the subject. And it is a peculiarity in this instruction, that in that part of it granted at the instance of appellant, it denies to the health officer all right to decide on the necessity of the expenditures to preserve the health of the city, (a necessity of which it may be presumed he was peculiarly competent to determine,) and submitted the determination of that necessity exclusively to the jury; yet in the ascertainment of the amount to be recovered, they were denied the exercise of all discretion and judgment, and were confined "to such amount of expenses as in the opinion of the health officer was necessary to disinfect the vessel, cargo and passengers of the said disease, and to prevent their propagating the same." Notwithstanding it did not appear that he had any particular knowledge of the great portion of those expenses, or that they were incurred under his supervision or management, but on the contrary, that they occurred after he had ceased officially to have any agency in relation to them, and when the patients, or persons infected, were under the care and management of the physicians and nurses of the small pox hospital; of whom there is no ground for presuming that the health officer was one. Of the amount and necessity of the expenses that accrued at the small pox hospital, (which form the great bulk of the amount in controversy,) the physicians and nurses thereof possessing actual knowledge, were more competent than the health officer to give opinions and testimony as to the necessity thereof, for the purpose for which such expenditures were authorised. The county court therefore erred in its opinion which excluded such testimony from the consideration of the jury.

The second prayer appears to us to have been properly rejected by the court, because it called for an instruction to the jury, that no expenses could be recovered, which were not "incurred in disinfecting and purifying the *Ellen Brooks,* the persons, baggage and articles on board of her at the time of her arrival at the port of *Baltimore.*" Whereas, the ordinance

not only authorises the health officer "to take or direct such measures in regard to the officers, crew and passengers, as in his opinion may be necessary to disinfect them;" but also "to prevent their propagating the disease." For aught that we can know, one-half the expenses incurred, might have arisen, not from the measures taken by order of the health officer to disinfect or purify the officers, crew and passengers, but "to prevent their propagating the disease." The qualification given by the court to the second prayer in this exception, is almost identical with the modification made of the first prayer, and is erroneous for the same reasons.

We concur with the county court in the rejection of the appellant's third prayer, that under the ordinance "the health officer had no power to send to the small pox hospital any but those persons who, when sent, were affected with the small pox or varioloid disease, and that no expense incurred from the sending of any other persons, can be recovered in this action." The disposition to be made of persons afflicted with the small pox or varioloid disease is not left to the discretion of the health officer. The ordinance peremptorily directs them to be sent to the small pox hospital. But the discharge of this ministerial service is not the only duty imposed on the health officer, by the ordinance, in respect to the persons on board such vessel. He is further required "to take or direct such measues in regard to the officers, crew and passengers, as in his opinion may be necessary to disinfect them, and to prevent their propagating the disease." If then, in pursuing such measures, the health officer, acting with reasonable skill and *judgment*, and with a sound and honest discretion, had sent others of the crew and passengers, than those afflicted with the small pox, to the small pox hospital, we can see no sufficient objection to its being done, or to the recovery of all reasonable expenses incurred in their disinfection and purification, or during their necessary detention for the prevention of their propagation of the small pox.

The county court, we think, was obviously right in rejecting the appellant's fourth and fifth prayers in his third bill of exceptions.

The rejection of the appellant's sixth prayer we also approve of. For although there are parts of this prayer which, if standing alone, the county court would have granted without the slightest hesitancy, yet they are coupled with other matters, so obviously wrong and inadmissible, that acting on the prayer as an entirety, it was properly refused by the court.

The seventh prayer was properly refused by the court below, for reasons assigned by this court in the previous part of its opinion.

The eighth prayer was rightly rejected, because it called on the court to leave to the finding of the jury certain conditions and qualifications, on which the appellant assumed to act as consignee of the vessel, of which no testimony had been offered.

No proof having been offered, which was legally sufficient to have warranted the jury in finding the fact, that the appellant was the ship's husband, and not the consignee of the vessel, his ninth prayer could not be otherwise than rejected.

The tenth prayer, for reasons stated in previous parts of this opinion, was correctly rejected by the court.

The rejection of the eleventh prayer also meets our approbation, because, although the expenses incurred for fresh provisions may not have been necessary in the sense in which those terms are used in the ordinance, yet, according to the testimony of the health officer, they may have been necessary to prevent the propagation of the disease.

We concur with the county court in its rejection of the twelfth prayer. By it the court were requested to instruct the jury, "that there can be no recovery in this action, for any expense incurred on account of any passenger, not afflicted at the time of incurring such expense, with the small pox or varioloid disease, unless the jury find that such expense was necessary to prevent such passenger from being infected with the small pox." This prayer the court clearly could not have granted consistently with the ordinance, as it would have excluded all allowances for expenses incurred for the disinfection, purification, and necessary detention of the passengers, to prevent the propagation of the contagious disease.

We concur with the county court in granting the plaintiffs' prayers in the appellant's first bill of exceptions, and in its rejection of all his prayers in the third bill of exceptions; and we also concur in its rejection of the appellant's two prayers in the second bill of exceptions, but we dissent from the modified instruction given by the court to the jury under the first prayer, and also from its qualified instruction given under the second prayer, and therefore reverse its judgment.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.