## McIntire *v.* Pembroke.

The health officers of a town have no authority to make the town liable for medicines and, medical services furnished to inhabitants who are not paupers.

Assumpsit, by Harvey G. McIntire against the town of Pembroke, to recover for medicines and medical attendance furnished and bestowed by the plaintiff, as a physician, in treating some eleven or twelve persons who were sick with the small-pox, in Pembroke, in the autumn of 1871, and the winter following. The persons so treated were not paupers. The case was tried by the court. The plaintiff claimed and testified that his services as aforesaid were engaged by the selectmen, acting as health officers of said town. The defendants claimed, and the selectmen testified, that he was only employed by them, acting in any capacity, to attend upon one family, who were paupers, and to vaccinate certain persons, for which service the court found he had been paid by the town. There was evidence tending to show that the selectmen, being at the same time health officers, took some precautionary measures for the protection and preservation of the public health against the ravages of said disease; and the plaintiff claimed that it was within the scope of their authority to employ a physician

to attend upon those infected by the disease, whether paupers or not, and that the town would be bound by a contract made by them to that end.

But the court being of opinion that the law was otherwise, found a general verdict for the defendants, without deciding the disputed fact whether the services were rendered at the request and upon the employment of the selectmen or not. The plaintiff moved to set aside the verdict; and the question reserved was, whether the health officers of a town have authority to bind the town for medicines and medical attendance furnished, in a case like the present, to inhabitants of the town who are not paupers.

*Mugridge* (with whom was *Blanchard*), for the plaintiff.

We are aware of the decision of the court in the case of *Wilkinson* v. *Albany*, 28 N. H. 9; but we seek in this case to charge the defendants upon other grounds.

We claim that the services of the plaintiff were engaged by the *health officers* of a town; and the question to be determined by the court here is, whether the *health officers* of a town have authority to bind the town for medicines and medical attendance furnished to inhabitants of the town who are not paupers, under the circumstances of this case. Ch. 101, sec. 1, of the General Statutes, authorizes the health officers of a town to make such " regulations " relating to the public health, as, in their judgment, the health and safety of the people may require, etc. Sec. 10 of the same chapter binds the town for " all expenses incurred by them in the execution of their duty," etc. Sec. 2, of chapter 102, gives the health officers power to establish pest-houses, and to make such regulations respecting them and for preventing unnecessary communication with the patients or their attendants, as they may think proper.

We contend that it is perfectly obvious, from the provisions of the statutes above quoted, and others that might be referred to, that it was the intention of the legislature to confer on the health officers of towns the authority to take such measures and to pursue such a course of conduct as might, in their judgment, be regarded as necessary to stay the progress of a pestilential disease like the small-pox, and to protect community from its ravages, and that this was to be done by them at the expense of the town. The law does not undertake specifically to point out the course to be pursued by them, or the measures to be adopted in order to guard the public health; but it confers upon them, in the exercise of a sound discretion and judgment, as we contend, the power to adopt such regulations and to pursue such a course of conduct as may seem necessary under the circumstances for the accomplishment of the end in view.

The word " regulations," as used in the statutes, is not to be construed in any confined or limited sense, but it is to be interpreted, in connection with the other provisions of the statutes, in the broadest

and fullest sense, and in such a way as to include all those acts which oftentimes must be of a prompt and decisive character, and all such power and authority as may be regarded by the health officers, in the exercise of a sound judgment and wide discretion, as being necessary to be done and exercised in so important a matter as the preservation of the public health; and we contend that the fullest power to that end was intended to be conferred by the legislature.

The precise question involved here is, whether health officers, with the power thus conferred upon them, have authority, as a sanitary act or regulation, to employ at the public expense a physician to attend persons afflicted with the small-pox, whenever in their judgment the public health and safety require it; and we say that such power clearly belongs to them. We say, that the employment of a physician under these circumstances must have been one of the very acts or " regulations " which the legislature had in mind, and which they intended to authorize by enactment of the law; for we would suggest that no more proper or judicious measure could be resorted to by health officers, to stay the progress of a disease like the small-pox in a community, than the very act of placing the patients, and the pest-house in which they may be confined, in the hands of a competent physician, whose skill could be exercised upon the diseased person when he might need it, and whose care might be given in seeing to it that such patient was not allowed to leave such house until he had been properly healed, and himself and clothing properly cleansed, and until such other precautions of a sanitary character might be resorted to, as might seem to be demanded under the circumstances. Clearly, health officers have a right to establish pest-houses within an infected district, and to fill them with patients. Now, will it be contended that, this being done by them, such patients are to be left to sicken and die from this loathsome disease, in that pest-house, because the health officers have no authority to employ a physician, or to supply them with suitable medicine needed for their restoration ?

We submit, that no such inhumanity toward persons infected with this disease, or toward society generally, was contemplated by the legislature, but that, as before suggested, in case a disease as detestable and offensive as the small-pox should make its appearance in any town or city of this state, the health officers, acting for the public safety, would have a right to supply patients with suitable medicines, nurses, physicians, and other attendants, at the expense of the town, whenever the public health and safety might in their judgment be subserved by such a course. We know very well, that the construction of the statute for which we contend in this case has been the one under which health officers in various towns' and cities in this state have acted, and many instances might be cited to the court where the statute has received a practical interpretation, and money been paid by towns for services like those for which the plaintiff seeks to recover in this suit. We do not understand that selectmen could bind the town for supplies or medical attendance furnished a person unless he was a pauper; but

here the money is not paid by the town through the health officers for the *personal* benefit of the patient, in one sense, but it is paid for a *public* benefit and advantage, to aid in protecting perhaps an entire community from destruction by a loathsome disease; and it is in this view that the case differs in principle from *Wilkinson* v. *Albany*, before cited.

*Eastman, Page & Albin,* for Pembroke.

The argument of the plaintiff's counsel is ingenious, but we think not altogether sound.

I. The decision in *Wilkinson* v. *Albany* was made upon facts substantially like those of the present case, and the statutes regulating such matters were the same when that case was decided, as at the present time. Rev. Stats., ch. 119, secs. 1, 11—ch. 120, sec. 2. In *Wilkinson* v. *Albany*, the court say " whatever the selectmen did was in their official capacity; and as the town was not liable, the selectmen could not by their undertaking make them so." We submit that the plaintiff in this case cannot recover, unless *Wilkinson* v. *Albany* is to be overruled.

II. But can health officers, as such, bind the town for medical services rendered to persons sick with the small-pox, who are not paupers ? Counsel argue that the power to make " regulations," as spoken of in sec. 1, ch. 101, General Statutes, and in sec. 2, ch. 102, give that power. It will be noticed that these chapers relate to different sub-jects, and each is of course applicable to that subject alone of which it treats. Chapter 101 is entitled "Removal of Nuisances," and the " regulations " there spoken of are to have effect under the provisions therein made. They evidently have no relation to the treatment or management of small-pox. Chapter 102 is entitled "Small-Pox and Pestilential Diseases," and the " regulations " there spoken of are applicable to pest-houses and the communication with them. They refer in no way to the treatment of the disease by physicians ; moreover, the provision in the first section of that chapter providing for vaccination, by implication, excludes all other treatment.

FOSTER, J.   Laws, ordinances, and regulations, relating to the comfort, health, good order, convenience, and general welfare of the people, are established in every enlightened community by constitutional legislation. They are ordinarily denominated police regulations.

Individual property and convenience must be subservient to the demands of public necessity ; and the inhabitants of a state or municipality must submit to the burden of taxation, for expenditures required for the safety and protection of the people.

The exercise of these police regulations comes either from express statutory law applicable to the whole state, or from the power conferred by the legislature upon a chartered city or town to make special regulations, ordinances, or by-laws for its own government. See Dillon on Municipal Corporations 136, 7 ; *Harrison* v. *Baltimore*, 1 Gill 264.

It need hardly be remarked that, unless a broad discretion is conferred by the legislature with regard to the exercise of police regulations, they must be administered in strict conformity to the statute, tending as they generally do to the subversion. or abridgment of individual rights, under the common and natural law.

People may not be taxed for unauthorized expenditures by a town or its officers, nor concluded by the contracts of their agents undertaken outside the scope of the agent's authority.

The town of Pembroke is governed by the general laws of the state. It has no special police authority, by virtue of any legislative grant, or charter applicable peculiarly to itself. .

By what authority, then, were the health officers of Pembroke empowered to bind the town for the cost of medicines and medical attendance furnished to inhabitants of the town who were not paupers? Their authority is derived solely from, defined, and limited precisely by, chapters 101, 102, and 103 of the General Statutes. The provisions of these, applicable to the present case, are identical with those of chapters 119 and 120 of the Revised Statutes.

In respect of the present inquiry, these officers derive no authority from chapter 101 of the General Statutes. It is entitled "Removal of Nuisances," and applies to things ordinarily, naturally, and by common use of language regarded as offensive and unclean matter mainly, and not to pestilential diseases, which are treated of exclusively in the next. succeeding chapter. By the first section of chapter 101, the health officers are empowered to make regulations for the prevention and removal of nuisances, and such other regulations relating to the public health as in their judgment the health and safety of the people may require,—which shall take effect when they shall be approved by the selectmen, recorded with such approbation by the town-clerk, and published in some newspaper printed in the town, or copies thereof posted in two or more public places in the town.

It is claimed by the plaintiff that the authority of the health officers to employ at the expense of the town his professional services is derived from this provision of the statute; but it is manifest that if the plaintiff's services were employed by virtue of any such " regulation relating to the public health " as is indicated by the terms of this section, it never took effect; because there' is no pretence that such regulation was ever approved, recorded, or published, as required by the statute.

The next chapter—ch. 102, Gen. Stats.—is enacted with special reference to " small-pox and pestilential diseases." It is so entitled. Its first section provides for the appointment, by the town or by the selectmen, of an agent for vaccination, who shall vaccinate all persons who have not had the small-pox or the kine-pox, and shall receive a compensation at the expense of the town. No provision is made for doctoring or curing persons who have contracted the pestilential disease.

The second action provides for the establishment of a pest-house, to

which persons having the small-pox or other malignant pestilential disease may be removed by the health officers, who are authorized to make such regulations respecting such house, and for preventing unnecessary communication with such persons, as they may think proper.

Chapter 103 relates exclusively to quarantine.

It is not pretended that the authority of the selectmen or health officers to make such a contract as the plaintiff sets up, can be derived from any authority other than that conferred by some or all of the sections of chapters 101 and 102, to which reference has been made; and we are unable to see any plausible ground for assuming that such authority can be derived from any of these provisions. Nor can we discover any reason whatever for such a construction of the law as would confer the authority.

If deemed essential to prevent the spread of the disease, infected persons may be removed to the pest-house; and, while thus secluded from their friends and under municipal control, they may, perhaps, be in a temporary condition of pauperism; but whether in a pest-house or in their own families, so long as they are not poor and unable to support themselves—Gen. Stats., ch. 74, sec. 1—there is no more reason why the town should be chargeable with the cost of their cure when sick with small-pox, than when afflicted with any other malady. See *Farmington* v. *Jones*, 36 N. H. 271.

The whole question, however, is settled already, in this state, by an authority, with the reason and force of which we are quite contented. The case of *Wilkinson* v. *Albany*, 28 N. H. 9, was decided in 1853, when the statute law upon this subject was precisely the same as now; and it was then declared by the court, *per* GILCHRIST, C. J., that the selectmen could not make the town liable for the professional services of a physician, rendered to a family not paupers, although such physician was entitled to recover (as he would be under the present law) a reasonable compensation for his services in vaccinating them. If selectmen could not thus bind the town, neither could the health officers. As the town was not liable at all, neither selectmen nor health officers could make them so by a contract with the plaintiff. The chapters relating to the rights and duties of health officers apply just as well to selectmen, who are required by law in certain cases to discharge the duties of such officers. Gen. Stats., ch. 37, sec. 4.

We are very clearly of the opinion that the plaintiff's exception is groundless, and there must be

*Judgment on the verdict for the defendants.*