### TOWN COUNCIL OF SUMMERVILLE v. PRESSLEY.

1. Where a town council has authority under its police powers to pass ordinances for the preservation of health, no question can arise in the courts as to whether an ordinance restricting the cultivation of the soil beyond a limited area is necessary to the health of the town, or whether unrestricted cultivation would be a nuisance.
2. Under the extensive police powers of the State, the legislature may limit the area of soil to be cultivated, when, in its judgment, the public health so demands, and may delegate this same power to a municipality to be exercised within its corporate limits.
3. An ordinance of a town council which, in the interests of the public health, prohibits the cultivation in the town of a garden of more than one-eighth of an acre by any one family, is not unequal and unjust within the prohibitions of the State or United States constitutions in that it fails to fix the limits of the garden according to the area of land owned by the family.
4. Nor is such an ordinance rendered unconstitutional by the fact that no such restriction is imposed upon persons residing in other communities of the State similarly situated.

Before WITHERSPOON, J., Berkeley, February, 1889.

This was an appeal by Benjamin C. Pressley to the Circuit Court, from a sentence of the Town Council of Summerville, imposing upon him a fine for violating a town ordinance which prohibited the cultivation of a garden of more than one-eighth of an acre. The order of the Circuit Judge, omitting its statement, was as follows:

The police power of the State is far-reaching, and in the exercise of this power the legislature is only limited by the paramount provisions of the State or federal constitutions. This power includes the protection and preservation of the public health. However absolute the title of the citizen to his property may be, he holds such property subject to the proper exercise of this police power, either by the legislature directly or by municipal authorities to whom the legislature may delegate such power. In the exercise of this power, laws and ordinances for the protection and preservation of the public health, though they may interfere with or impair the use and enjoyment of property, are

not unconstitutional because no provision is made for compensation. Such laws do not appropriate private property for public use, but simply regulate the use of property by the owner. If the owner suffers injury by restraints imposed upon the use of his property in the exercise of the police power, he is presumed to be compensated for such injury by sharing in the general benefits intended and calculated to be secured by the exercise of such power. It is competent in the exercise of police power for the legislature to so direct the use of property by one citizen that it shall not prove pernicious to others. The exercise of the police power is very different from the exercise of the right of eminent domain.

I think the legislature could delegate to the town council of Summerville authority to pass the ordinance in question. Municipal authorities can only exercise the powers specially delegated to them by the legislature under their charters. Has the legislature delegated power or authority to the town council of Summerville to pass the ordinance of 1883? It is contended that the grant of power "to make ordinances respecting the police of said village," was intended merely to apply to the constabulary of said town. It is difficult to see upon what ground such a construction can be sustained in view of the accompanying grant of general power to said town council to pass such ordinances "for preserving the health, peace, order, and good government in said town as shall appear to the intendant and wardens necessary and requisite." I think that the legislature has granted to the town council of Summerville such police power as said town council may deem necessary and requisite for the protection and preservation of the health of said town. The legislature having granted the power to the town council of Summerville, the exercise of the power, according to the decisions of the courts of this State, is left to the discretion of the town council, which discretion cannot be controlled by the courts unless the exercise of the power violates some constitutional provision. See *City Council* v. *Baptist Church*, 4 Strob., 310 ; *State ex rel. Copes* v. *Charleston*, 10 Rich., 502.

It has been contended that the ordinance of 1883 has been repealed by the act of 1885, amending the charter of the town of

Summerville. "A charter may be amended and the name of the place and the governing body may be changed, and its boundaries may be altered, while in law the corporation remains the same." 1 Dillon, p. 111. The act of 1885 merely amends the former charter of the town of Summerville, and does not create a new corporation. I do not see anything in the amendatory act of 1885 which operates as a repeal of the ordinance of 1883.

Is the ordinance of 1883 unequal and unjust, as contended in the third ground of appeal? Absolute equality in adjusting the burdens of government is impracticable. If no direct and invidious discrimination is made in favor of certain persons to the prejudice of others, there can be no valid constitutional objection to the mode pursued, because to some extent inequalities may arise. The ordinance of 1883 states: "Whereas it is necessary for the preservation of the public health in Summerville, that the soil should not be cultivated beyond a limited extent: * * * therefore be it ordained," &c. This ordinance applies to each and every family or householder within the limits of the town of Summerville. The town council of Summerville, in the exercise of the discretion vested under their charter, having declared by the ordinance of 1883 that it would be injurious to the public health of said town for any one to cultivate the soil for agricultural purposes in the excess of one-eighth of an acre, it does not appear that this restriction creates such an invidious discrimination between the citizens of said town as to render said ordinance obnoxious to any of the provisions of the State or United States constitutions. It is not the province of the court to question the propriety of the grant of power by the legislature to the town council of Summerville. The duty of the court is limited to the inquiry, whether or not the power exists, and if so, whether or not the exercise of the power violates any constitutional provision.

I conclude that the ordinance passed by the town council of Summerville in 1883 was a valid ordinance at the time that the fine was imposed upon appellant. It is therefore ordered, that the appeal be dismissed, and that the judgment below be affirmed. It is further ordered, that a certified copy of this order be furnished the intendant and wardens of the town of Summerville.

Defendant appealed.

*Messrs. Inglesby & Miller* and *Lord & Hyde,* for appellant, *cited* Const. of S. C., art. I., § 23; Const. of U. S., art. V.; *Borough of Strasburg* v. *Bachman* (Pa ), 13 Cent. Rep., 208; Dill. Mun. Corp., § 329; Cool. Const. Lim., 199, 203.

*Mr. Charles Boyle,* contra.

May 19, 1890.   The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.   The village of Summerville was originally chartered in 1847, and the corporate authorities were "invested with all the powers and privileges conferred, and subject to the same restrictions and penalties imposed on the village of Newberry, by an act passed on December 17, 1841," of which act section five provides as follows: "And the intendant and wardens shall have full power, under their corporate seal, to make and establish all such rules, by-laws, and ordinances respecting roads, streets, markets, public spring, and police of said village as shall appear to them necessary and requisite for the security, welfare, and convenience of the said village, or for preserving the health, peace, order, and good government within the same," &c. The charter of Summerville was amended in 1885, enlarging the boundaries, adding two wardens, and changing the name to that of the "Town of Summerville," but without changing the powers and privileges conferred by the charter of 1847, adopting those given in the charter of Newberry.

In 1883, the town council passed an ordinance "To limit the culture of the soil, and more effectually to prevent the destruction of trees in the town of Summerville." The preamble recited: "Whereas it is necessary for the protection of the public health of Summerville, that the soil should not be cultivated beyond a limited extent, and that the injury and destruction of trees should be more effectually prevented," the ordinance prohibited entirely the culture of rice, and then provided as follows: "That from and after the date herein, the maximum quantity of land which it shall be lawful for any family or household, or the immediate servants or employees of such family or household, to

fertilize, plant, or cultivate for agricultural purposes within the corporate limits, shall be one-eighth ($\frac{1}{8}$) of one acre, which shall be on the lot or premises of such family or household, regardless of the quantity or extent of the lot or tract of land owned or occupied by such family or household, or its immediate servants, or which may form part of the premises of said family residence or tract of land. But this section shall not be construed so as to abolish or prohibit the planting of oats, rye, or barley between the first day of November and February 15, or the planting and proper cultivation of flower gardens or of the grape or fruit trees or any other kind of trees whatsoever," &c.

It seems that under this ordinance the town council imposed upon the defendant, a citizen of the town, a fine of twenty dollars for violating the ordinance, in cultivating his lands for agricultural purposes without regard to the limit imposed. He admitted that he had violated the ordinance, but denied the authority of the town council to pass such an ordinance. Upon appeal, Judge Witherspoon held that the duty of the court was limited to the inquiry, whether or not the power existed, and if so, whether or not its exercise violated any constitutional provision. Concluding that the ordinance was valid at the time the fine was imposed on the appellant, he ordered that the appeal be dismissed and the judgment of the town council in imposing the fine be affirmed.

From this decision the defendant now appeals to this court upon the following grounds: "1. Because his (defendant's) garden has been continuously cultivated in excess of said town ordinance for more than thirty years, and there is no allegation, claim, or proof that such cultivation was negligent, or in any manner so conducted as to create a nuisance. 2. Because, in the absence of such allegation and proof, the legislature has not conferred and could not confer on the town council any authority to prevent the usual proper use of cleared land by the owner, without full compensation to him. 3. Because the ordinance of said town council is unequal and unjust, in that it permits the owner of one-fourth or one-half of an acre of land to cultivate one fourth or one-half of his possessions, and denies to the owner of six acres the right to cultivate more than one forty-ninth part

of his land.    4.  Because his honor omitted to decide one impor-
tant point, argued by the defendant before him, to wit, the power
of the town council, reversed in section 3 of said ordinance,
whereby it may give permission to any one to cut down trees in
the town, violates the 14th amendment of the United States Con-
stitution."

There must be some misprint in the last ground of appeal, es-
pecially in reference to the word "reversed."    But as there is
no question before this court, arising under the third clause of
the ordinance, which allows permission to be given to some per-
sons and not to all, to cut down trees, &c., within the corporate
limits, it will not be necessary to consider now whether it vio-
lates the 14th amendment of the Constitution of the United
States.

The first exception complains that a citizen of the corporation,
who owned cleared land in excess of the limit imposed by the
ordinance at the time of its passage, was not bound to conform
to the restriction as to the amount to be cultivated for general
agricultural purposes, without allegation and proof that such cul-
tivation was negligent or of such a character as to create a nuis-
ance.    As it seems to us, this view ignores entirely the existence
of the ordinance.    Undoubtedly, as a rule, every man may culti-
vate his own land in his own way, but even in that case he may
use his land in such manner as to amount to a "nuisance" indict-
able at common law.    That, however, does not touch the ques-
tion under the ordinance, passed by virtue of the powers con-
ferred upon the corporate authorities by the legislature "for pre-
serving the health, peace, order, and good government of the
town."    The ordinance, by its declared purpose, was a police
regulation for preserving the health of Summerville, a small town
in the pines, about twenty miles out of Charleston, which affords
a convenient summer resort for health.    Assuming, for the pres-
ent, that the town council had the power to pass the ordinance, no
question can be made, whether "a nuisance" had been created,
nor whether the restrictions complained of were necessary to ac-
complish the purpose in view.    It was their exclusive right to
judge what was "necessary and requisite" to preserve the health

of the town. 1 Dillon on Corporations, section 146, and author-
ities in note.

The second exception makes the objection that the legislature
has not conferred and could not confer on the town council any
authority to prevent the usual proper use of cleared lands by the
owner, without full compensation paid to him. The State, through
the law making body, certainly possesses the police power, which
from its very nature has no well defined limits, but must be as
extensive as the necessities which call for its exercise. Judge
Dillon describes it thus: "Every citizen holds his property sub-
ject to the proper exercise of this (police) power, either by the
State legislature directly or by public corporations to which the
legislature may delegate it. Laws and ordinances relating to the
comfort, health, convenience, good order, and general welfare of
the inhabitants are comprehensively styled 'police laws or regu-
lations.' And it is well settled that laws and regulations of this
character, though they may disturb the enjoyment of individual
rights, are not unconstitutional, though no provision is made for
compensation for such disturbances. They do not appropriate
private property for public use, but simply regulate its proper
use and enjoyment by the owner. If he suffers injury, it is either
*damnum absque injuria*, or, in the theory of the law, he is com-
pensated for it by sharing in the general benefits, which the regu-
lations are intended and calculated to secure. The citizen owns
his property absolutely, it is true. It cannot be taken from him
for any private use whatever without his consent, nor for any
public use without compensation; still he owns it subject to this
restriction, namely, that it must be so used as not to injure others,
and that the sovereign authority may, by police regulations, so
direct the use of it that it shall not prove pernicious to his neigh-
bors or the citizens generally. These regulations rest upon the
maxim, *salus populi suprema est lex.* This power to restrain a
private injurious use of property is very different from the right
of *eminent domain.* It is not a taking of private property for
public use," &c.

In the great leading case upon the subject, of *Commonwealth
v. Alger* (7 Cush., 85), Chief Justice Shaw said: "Rights of pro-
perty, like all other social and conventional rights, are subject to

such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law as the legislature, under the governing and controlling power vested in them by the constitution, may think necessary or expedient. This is very different from the right of eminent domain—the right of a government to take and appropriate private property to public use whenever the public exigency requires it; which can be done only on condition of providing a reasonable compensation therefor. The power we allude to is rather the police power, the power vested in the legislature by the constitution, to make, ordain, and establish all manner of wholesome and reasonable laws, statutes. and ordinances, either with penalties or without, not repugnant to the constitution, as they shall judge to be for the good and welfare of the commonwealth and of the subjects of the same. It is much easier to perceive and realize the existence and sources of this power than to mark its boundaries or to prescribe limits to its exercise," &c.

It would seem that these authorities are conclusive of the right of the State, in the exercise of the police power, to make the restriction complained of. If the legislature itself had passed the Summerville ordinance just as it stands, it could not, as we think, be doubted that it was a constitutional exercise of the police power. It is said, however, that it was a mistake to suppose that the cultivation of the soil in certain crops was dangerous to health, and, therefore, the restriction was not a "proper" one. We suppose that the cultivation inhibited must have been considered as dangerous to health in the locality of Summerville. But be that as it may, it was a question for the law-making body. "The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions upon points of right reason and expediency with the law-making power." *Cool. Const. Lim.*, p. 201. Assuming that the legislature had the power to pass the Summerville ordinance, there can be no doubt that it had the right to delegate that power to the municipal authorities of Summerville as the governmental agent of the State within the corporate limits of the town. "The preservation of the public health and safety is often made a matter of munici-

pal duty, and it is competent for the legislature to delegate to municipalities the power to regulate, restrain, and even suppress particular branches of business, if deemed necessary for the public good." See 1 Dill. (3rd edit.), section 144, and *Harrison* v. *Baltimore*, 1 Gill, 264.

The charter of the town of Summerville has the following: "Section 5. And the said intendant and wardens shall have full power, under their corporate seal, to make all such rules, by-laws, and ordinances respecting the roads, streets, markets, public spring, and police of said village as shall appear to them necessary and requisite for the security, welfare, and convenience of said village, or for preserving health, peace, order, and good government within the same," &c. This provision was adopted from the charter of the town of Newberry, and seems to be as full and comprehensive as municipal charters generally are. We think that the legislature intended to give to the city council of Summerville all the police powers it possessed, to be exercised within the corporate limits of the town. As was said by the court in the case of *Harrison* v. *Baltimore*, *supra:* "By its charter, the city of Baltimore was vested with full power and authority to make all ordinances necessary to preserve the health of the city. The transfer of this salutary and essential power is given in terms as explicit and comprehensive as could have been used for such a purpose. To accomplish within the specified territorial limits the objects enumerated, the corporate authorities were clothed with all the legislative powers which the general assembly could have exercised. Of the degree of necessity for such municipal legislation, the mayor and city council of Baltimore were the exclusive judges. To their sound discretion is committed the selection of the means and manner (contributory to the end) of exercising the powers which they might deem requisite to the accomplishment of the objects of which they were made the guardians," &c. 1 Dill. Corp., § 144; *City Council* v. *The Baptist Church*, 4 Strob., 310 ; *State ex rel. Copes* v. *City of Charleston*, 10 Rich., 502.

The third exception complains that the ordinance is "unequal and unjust, in that it permits the owner of one fourth or one-half of one acre of land to cultivate one-fourth or one-half of his possessions, and denies the owner of six acres the right to cultivate

more than one forty-ninth of his lands." The second clause of the ordinance declares what shall be the maximum quantity of land it shall be lawful for any family to cultivate in ordinary agricultural crops. Section 12, art. I., of our Constitution declares "that no person shall be subjected in law to any other restraint or disqualification, in regard to any personal rights, than such as are laid upon others under like circumstances." And the 14th amendment of the Constitution of the United States provides, among other things, "that no State shall deny to any person within its jurisdiction the equal protection of the laws," &c. Under these provisions, one or both, it is contended, that the section of the ordinance which fixes a maximum of soil to be cultivated, is unconstitutional—being, as alleged, "unequal and unjust," in that the maximum allowed is the same for all citizens, without regard to their "possessions," respectively.

The intent of the ordinance was to limit to a certain point the cultivation of certain crops; and, as it seems to us, the question of "equality" should be determined, not by the number of acres a citizen may happen to own, but by the limit imposed, which, it is admitted, is precisely the same upon all. It is manifest that the object was, not to impose a burden on the citizens in the nature of a tax, which, of course, would have to be levied in proportion to property, but to limit the cultivation of the soil, with a view to the preservation of the health of the town. A restriction only according to the quantity of land owned, as suggested, would certainly have failed in accomplishing the purpose in view; and possibly might have been obnoxious to the very objection made here—as creating a distinction among citizens dependent upon the amount of lands owned by them respectively. Although the citizens may own lands within the corporate limits in different amounts, some more and some less, yet in that regard we are obliged to consider that they are all "under like circumstances," and the amount of soil allowed to be cultivated in particular crops being the same to all, we cannot hold that this section of the ordinance is unconstitutional on the ground of "inequality" in its provisions.

It is further contended in the argument, that the ordinance was unconstitutional for another reason, to wit, that it violated the

5—33

constitutional law of "equality" by "prohibiting the cultivation of dry land in one village of the State without including in the act all its towns and villages like situated and under like circumstances. A nuisance in one place must be a nuisance in every other place in like circumstances." As we have endeavored to show, there is no question of actual nuisance in the case. The town council, which alone had the right to judge, deemed the ordinance necessary to preserve the health of the town, and we have no right to review that judgment. In reference to the local character of the ordinance, it can hardly be necessary to say more than repeat what was said in *Utsey* v. *Hiott*, 30 S. C., 365: "The local character of the act does not make it necessarily unconstitutional. While there may be some just objection to local laws in general, it is well established, that the authority that legislates for the State at large must determine whether particular rules shall extend to the whole State and all its citizens, or, on the other hand, to a subdivision of the State or a single class of its citizens. The circumstances of a particular locality, or the prevailing sentiment in that section of the State, may require or make acceptable different police regulations from those demanded in another. As Mr. Justice McIver said in the case of *State* v. *Berlin*, 21 S. C., 296: 'The whole matter is well summed up in a note to 1 Cooley's Lim., p. 390 (2 edit.): "To make a statute a public law of general obligation, it is not necessary that it should be equally applicable to all parts of the State; all that is required is, that it shall apply equally to all persons within the territorial limits described in the act" ' " (and authorities).

The judgment of this court is, that the judgment of the Circuit Court be affirmed.