## TOWN OF DARLINGTON v. WARD.

TOWN ORDINANCE—NUISANCE—POLICE POWER—COURTS.—In passing on the validity of an ordinance passed by a town, the Court can only inquire as to the constitutionality of the act delegating the power, and whether the town has acted within the scope of the power so delegated; but the Court cannot consider whether an ordinance is reasonable or necessary. *Divided Court.*

Before BUCHANAN, J., Darlington. Affirmed.

The defendant, J. J. Ward, was convicted by the town council of Darlington for violating an ordinance prohibiting the keeping of hogs within the corporate limits of the town. He appealed to the Circuit Court. The Circuit decree is as follows:

This case comes up on the appeal from the decision of the mayor fining the appellant for the violation of an ordinance forbidding the keeping of hogs within the corporate limits. Soon after the decision, I made and filed a short memorandum of my reasons for the judgment rendered; but owing to the scarcity of time and the absence of authorities at the moment, I have thought a more extended view of my reasons may not be amiss when the importance of the powers conferred by the recent act is remembered. The ordinance in question reads: "That on and after December 31st proximo, it shall be unlawful for any person or persons to keep any hog or hogs on any premises within the corporate limits of the town; and any person or persons so doing, shall be punished by a fine of not less than $10, or

by imprisonment not exceeding thirty days, or both, at the discretion of the said board of health." No question, as I understand, was made as to the latter part of the ordinance, the purpose being merely to test whether the town council have the power to pass an ordinance forbidding the keeping of hogs within the corporate limits and punishable with fine. The appellant was fined $20 for a violation of the ordinance. I have, therefore, confined myself simply to the points made, which presuppose the proper passage and sufficient phraseology of the ordinance in question.

The grounds of appeal raised before me are as follows: I. That the ordinance, by virtue of which the defendant has been fined, is unconstitutional and void, inasmuch as it takes from the citizens valuable rights in property without compensation. II. That the said ordinance is without authority in law and illegal. III. That the said ordinance transcends the powers granted to the town council of Darlington and the mayor of the town, and is *ultra vires* and illegal. IV. That if the keeping of a hog by Mr. Ward was an offense, sections 960–969, inclusive, of the Revised Statutes provides a way of dealing with the same, and that the said provision is exclusive of any other way of dealing with the said offense. V. That the said ordinance is inconsistent with the laws of this State, as laid down in sections 960–969 of the Revised Statutes, and so is without authority of law and void. VI. That it is apparent that the keeping of the hog by Mr. Ward was not a nuisance, and it did not affect the health of the town. Every citizen holds his property subject to the proper exercise of the police power, either by the legislature directly or by public corporations to which the State legislature may delegate it. Laws and ordinances relating to the comfort, health, convenience, good order, and general welfare of the inhabitants are comprehensively styled "police laws or regulations." And it is well settled that laws and regulations of this character, though they may disturb the enjoyment of individual right, are not unconstitutional. They do not appropriate private

property for public use, but simply control its proper use and enjoyment. Dill. Mun. Corp., sec. 146, *et seq.*, cited and approved in *Town Council* v. *Pressley*, 33 S. C., 62.

It is perfectly clear, if such an authority is given the town, that the exercise of such power would be unconstitutional. This leads us to a consideration of the second ground of appeal, which involves the consideration of exceptions III. and V. Was the town without authority to make and pass such an ordinance? It is to be observed that the power sought to be exercised is a very common police power—a power exercised for the health and comfort of a town. In addition to the powers given specifically to the town of Darlington by its charter and amendment, the powers conferred by sections 960–969 of the Revised Statutes, and the supplemental act of 1894, are invoked. Section 961 of the Revised Statutes give local boards ample powers, amongst others, "to define and declare what shall be nuisances to health in lots and streets, etc., and to regulate and control the keeping or slaughter of all kinds of cattle, sheep, goats, and swine or other animals in any city or town or part thereof." Again, it says: "And to prohibit and remove any nuisance or offensive matter in any public highway, road, street or other place, public or private, in such city or town, and to cause the removal of the same at the expense of the owner thereof, if he decline to move it after notice." Section 962 provides that such board of health shall notify the municipal authorities, who shall remove the same at the expense of the owner where necessary. Section 3 of the act of 1894 (21 Stat., 820), after reciting other powers, says: "And by abating and removing all nuisances which they shall deem prejudicial to the public health." Again: "And make all such other regulations as they shall deem necessary for the preservation of the public health." Section 8 of this act provides for the making of the rules and regulations necessary for the carrying of the powers granted into effect; and when approved as an ordinance, such regulations shall have the same force and effect as other ordi-

nances of the town. It then recited significantly: "And
all penalties for the violation thereof, as well as expenses
necessarily incurred in carrying into effect the same, shall
be recoverable for the use of the town or city in the same
manner as penalties for the violation of their city ordi-
nances, subject to the like limitations as to the amount
thereof." Certainly the powers given in both the Revised
Statutes and the act of 1894 are amply sufficient to prohibit
the keeping of anything that may be injurious to the health
or comfort of the town. Could more power be given? If
the act of 1894 is considered as supplementing the power
given in the Revised Statutes, the powers are ample, and
both abatement, fine or imprisonment may be given in the
sentence, unless such fine or imprisonment be for a higher
sum or longer term than is justified by the charter of the
town. If the act of 1894 repeals all prior legislation upon
the subject, yet such act contains enough to empower the
passing of such ordinance upon such subject. This brings
us to a consideration of the sixth exception. What is the
effect of the ordinance which was passed by the town coun-
cil, upon the recommendation of the board of health, as re-
quired by section 8 of the act of 1894? In this connection,
it is to be observed that while such ordinance prohibits the
keeping of a hog within the corporate limits, it does not in
so many words call it a nuisance, although it treats such
matter in the same manner as if it had been denominated
a nuisance. In this connection it bears a resemblance to
the ordinance of the town council of Summerville, for a
violation of which Judge Pressley was fined. Assuming
for the present that the town council had the power to pass
the ordinance, no question can be made whether a "nui-
sance" has been committed, nor whether the restrictions
complained of were necessary to accomplish the purpose in
view. It was their exclusive right to judge what was "ne-
cessary and requisite" to preserve the health of the town.
*Town Council* v. *Pressley*, 33 S. C., 62. Again, in the same
case, it was contended that the citizen "was not bound to

conform to the restrictions as to the amount to be cultivated for general agricultural purposes, without allegation and proof that such cultivation was negligent or of such a character as to create a nuisance. As it seems to us, this view ignores entirely the existence of the ordinance." *Town Council* v. *Pressley*, 33 S. C., 61. So here that the hog is properly or cleanly kept is beyond the question. It may be now so kept and may not be so kept in the future, or it may be so kept in the future. I can very well understand that however well and cleanly kept a hog may be, the smell, the noise, indecent exhibitions, etc., may necessitate such an ordinance. This may be emphasized by reason of the levelness of the territory, the probability of smell being circumscribed or confined, or other circumstances showing a prepared and fertilized hot-bed for the rapid growth and development of contagion upon its sudden arrival. The legislature having granted the power, the exercise of it, according to the decisions of the Courts of this State, is left to the discretion of the municipal corporation, which discretion cannot be controlled by the Courts unless the exercise of the power violates some constitutional provision. *Kennedy* v. *Sowden*, 1 McM., 326; *Crosby* v. *Warren*, 1 Rich., 385; *City Council* v. *Baptist Church*, 4 Strob., 310; *State ex rel. Copes* v. *Charleston*, 10 Rich., 502; *City Council* v. *Pressley*, 33 S. C., 61. The two former cases grew out of ordinances prohibiting the running at large of hogs, etc. The first is valuable as showing an attempt to prove that the judgment of the town council was erroneous, and that "hogs were the best of scavengers, and do their duty better than all the marshals the town ever had," p. 325. Surely, if hogs running at large are injurious to the health of the town, the confinement of a hog in a town lot in summer time can be considered injurious, actual or imminent. We have seen that such an ordinance did not transcend the powers granted, that their exercise was constitutional; is the remedy laid down by the Revised Statutes (abatement and removal) exclusive? It is plain to be seen that the act of 1894 gives

the council power to inflict all penalties for the violation thereof, as well as expenses necessarily incurred in carrying into effect the same, shall be recoverable for the use of the town or city in the same manner as penalties for the violation of the town or city ordinances, subject to the like limitation as to the amount thereof. If it were needed to show that the words, "penalties for the violation thereof," could include fines, we have only to look at our own case of *Crosby* v. *Warren*, 1 Rich., 386–7.

I conclude, therefore, from the law and evidence admitted, that the appeal shall be dismissed. Let this report be inserted in the case on appeal, in lieu of the memorandum heretofore written.

From this decree the defendant appeals on following exceptions:

I. Because the ordinance in question was not a reasonable or proper exercise of the police power vested in the board of health and the town council; and, inasmuch as it deprived the citizens of a valuable right in property without justification in police power and without compensation, is unconstitutional and void; and his Honor, the Circuit Judge, should have so held, and he erred in holding to the contrary. II. Because the keeping of his hog by the appellant was, as appears from the facts agreed on, not a nuisance detrimental to health, and the requirement that he remove and keep it beyond the town limits, without compensation for the right so taken away, was unjustifiable and unconstitutional, and the Circuit Judge should have so held, and he erred in not so holding. III. Because his Honor, the Circuit Judge, erred in holding the ordinance in question constitutional, authorized by the powers vested in the board of health and the town council of the town of Darlington by the statutory law of the State, and a reasonable exercise of the police power to preserve the health of the town; that if an unreasonable exercise of the police power, its reasonableness could not be questioned by the Court, and in dis-

missing the appeal. IV. Because the Circuit Judge erred in holding that the board of health of the town of Darlington, at the date of the passage of the ordinance in question, was authorized by law "to define and declare what shall be nuisances to health in lots, streets, etc.," * * * "and to prohibit and remove any nuisance or offensive matter in any public highway, road, street or other place, public or private, etc." V. Because the act of 1894, declaring the powers and duties of boards of health, repeal all acts inconsistent therewith or contrary thereto, and provides a special mode for dealing with and removing nuisances detrimental to health, and this mode is exclusive of all others, and the Circuit Judge should have so held, and he erred in holding to the contrary. VI. Because the police power vested in the board of health and the town council, except in the case of actual nuisance, is a power to regulate and not to destroy, and the ordinance in question is in excess of this power, and so illegal and void, and it was error in the Circuit Judge not to have so held. VII. Because the Circuit Judge should have held that the ordinance in question was invalid, for the reason that it is not within the scope of the powers conferred by the legislature, has no substantial relation to the police, and ought to be subserved, and tends in no degree to accomplish that end, is unreasonable and oppressive, declares that to be a nuisance which manifestly is not a nuisance, and invades the rights of the citizen protected by the general laws of the State, without express authority so to do, and he erred in not so holding.

*Messrs. Boyd & Brown*, for appellant, cite: *On point decided:* 33 S. C., 23; 16 Am. R., 612; 9 Ib., 577; 40 Ib., 57; 48 Ib., 105; 26 N. E. R., 561; 30 N. W. R., 73; 11 N. E. R., 936; 48 Am. R., 47; 33 Ib., 242; 45 Ib., 383; 41 N. W. R., 274; 10 Wall., 499; 33 S. C., 2; 1 Bay, 389; 2 Spears, 433, 711; 11 Rich., 553; 11 S. C., 290; 30 S. C., 96; 35 S. C., 114; 23 S. C., 66; 33 S. C., 23; 123 U. S., 661; 41 S. C., 243; 42 S. C., 239; 38 S. C., 493.

*Messrs. Woods & Macfarlan*, contra, cite: *On same point:* 2 McM., 236; 4 Strob., 310; 1 McM., 326; 1 Rich., 385; 33 S. C., 61.

March 26, 1897.   The first opinion was delivered by

Mr. Justice Pope.   The town council of Darlington, in this State, by an ordinance adopted on the 24th day of June, 1895, declared that it should be unlawful for any person to keep any hog or hogs within the limits of the town of Darlington, after the first day of January A. D. 1896, and that any person who shall transgress this ordinance should be punished by a fine of not less than $10 or by imprisonment not exceeding thirty days.   The defendant, J. J. Ward, violated this ordinance by keeping one hog in said town, which hog was allowed to run at large in a lot of two acres owned by said J. J. Ward.   Mr. Ward was summoned for trial for said offense, and, appearing before the mayor according to the summons, admitted that it was true that he kept such hog on a two acre lot in said town, but denied that he was guilty of any offense thereby; that neither the board of health nor the town council have the power to pass the ordinance in question.   He was adjudged guilty and ordered to pay a fine of $20.   From this judgment he appealed to the Circuit Court.   When this appeal was heard it was dismissed, and he now appeals from such judgment to this Court.   The judgment of the Circuit Court and the grounds of appeal will be reported.

.In considering this appeal I admit I have been greatly perplexed.   Certain it is that the right of property is here involved, and it is equally certain · that the power of the governmental agencies to protect public health are also deeply involved.   If the question could be narrowed down to a question of private right as opposed directly by the rights of the public, I should have no difficulty in subordinating the former to the latter; for in *City Council* v. *Baptist Church*, 4 Strob., 308, this Court held: "It is the office of the Judge to make such a construction as will redress the

mischief and advance the remedy; * * * that the law will never, by any construction, advance a private interest to the destruction of a public; but, on the contrary, will advance the public interest as far as it is possible, though it be to the prejudice of a private one." The case just cited arose from these facts: The corporation of the Wentworth Street Baptist Church was organized after the year 1836; it owned a lot of land in the city of Charleston which it desired to use as a burial ground for its members. But the city council in the year 1836 had by ordinance declared it unlawful to so use any lot of land in said city except in certain instances. When, therefore, the church asserted its right to use its land as it pleased by burying its dead therein, this suit was brought to prevent such use, and the Court held that the private right must be subordinated to that of the public, and the church was compelled to desist from such burials. Of course, the police power is made thus to subordinate private rights to those of the public. In our own State, there have been repeated recognitions of this law, when in the hands of municipal corporations, which have derived their right to its exercise, within their limits, by express grant from the General Assembly of the State. Primarily, of course, this right exists in the latter body. These decisions have related to sales of intoxicating liquors; to the regulations of burials in towns and cities; to regulations touching the observance of the Sabbath day; to the roaming at large upon the streets of incorporated cities and towns of horses, cattle, and swine; to the regulation of the area of land in said towns and cities which may lawfully be cultivated; and also to the presence of a conductor upon street railway cars where electricity was the motive power; and other kindred subjects. *McCullough* v. *Brown*, 41 S. C., 220; *State* v. *Aiken*, 42 S. C., 222; *City Council* v. *Baptist Church*, 4 Strob., 306; *City Council* v. *Benjamin*, 2 Strob., 508; *Kennedy* v. *Sowden*, 1 McM., 323; *Crosby* v. *Warren*, 1 Rich., 385; *State* v. *Pressley*, 33 S. C., 56; *State* v. *Sloan*, *ante*, 21.

The exercise of this police power by the State legislature, or by the cities or towns which the legislature clothes with the right to exercise this power, is not questioned by the appellant here. His contention is that this police power cannot be exercised by the legislature itself, nor by its creatures, known as municipal corporations, without restraint. In other words, his proposition is, that in order that police power may be used by either the legislature or municipal corporations, there must appear affirmatively that its use is reasonable. I must confess that there is not only authority, but sound reason for this contention. As was well said by Mr. Justice Miller, in announcing the unani-, mous conclusion of the United States Supreme Court in the case of *Yates* v. *Milwaukie*, 10 Wall., at page 505: "It is a doctrine not to be tolerated in this country that a municipal corporation, without any general laws either of the city or the State, within which a given structure can be shown to be a nuisance by its mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself. This would place every house, every business, and all the property of the city, at the uncontrolled will of the temporary local authorities." Similar views were expressed in the case of *McCullough* v. *Brown*, *supra*, and in the very recent case of *The State &c.* v. *Sloan*, *supra*, Mr. Justice Gary held: "It is not necessary to cite authorities to sustain the general proposition that street railways are subject to *reasonable regulations* by the authorities of the municipality where they are located, under its police powers (italics mine). In this case, whether the ordinance is *reasonable* is not before the Court for consideration" (italics mine). From this quotation it would seem that the majority of this Court regarded that it was necessary that such regulation by the city council of Columbia of street railways should be reasonable. Now, in a densely populated city, it would be entirely reasonable to forbid the presence of a hog in any enclosure, but in a small town, such as Darlington, where, as it appears from

the "Case" itself, Mr. Ward has a lot of six acres, whereon he resides, fronting on the principal street for residences, it might be another matter altogether. The health officer of the town of Darlington reports Mr. Ward's premises as cleanly and in proper condition. Is there anything in the habits of this animal to put it under the ban? Certainly nothing in the record here discloses any such objection. The decision of the board of health so declares, and the town council enforces by its ordinance such declaration of the board of health. Is the property of the corporators thus to be held at the mercy, so to speak, of these governmental agencies? It is true, that the maxim of the law is, "*Sic utere tuo ut alienum non lædas,*" but how is it made to appear that one hog, in a large lot, infringes upon the rights of the public as to health? From time immemorial in this commonwealth the right to own hogs has been recognized in the citizen. Is this right of property to be struck down upon the simple *ipse dixit* of a board of health or town council, without any showing whatever that the presence of this species of property is prejudicial to health in a thinly settled town? If courts have the right to inquire into the reasonableness of an exercise of the police power in any given case, surely this is an instance where the same should be done. We would be understood correctly. This ordinance of the town of Darlington does not pretend to exercise control or *regulate* the manner in which a hog is kept by any corporator, it denies absolutely his right to keep the same within the town. We recognize the distinction so clearly pointed out in the cases of *McCullough* v. *Brown,* *supra,* including the dissenting opinion therein, and, also, that of *State* v. *Aiken,* *supra,* existing between alcoholic liquors, lotteries, on the one side, and all other species of property on the other. The sale of alcoholic liquors for drink and the sale of lottery tickets are under the ban of society everywhere, but other personal property is not. As we before remarked, hogs are recognized as a legitimate species of property, and, therefore, in order for their pres-

ence in the town of Darlington, in the lot of a corporator as its owner, something more must be done than was done in this case to justify the denial to the defendant of his right to have his property, on his own premises, freed from this ordinance. I do not feel that a law, such as the police power, needs any more discussion at my hands. It is too well understood to justify any extended notice of its general effects. The case of. *McCandless* v. *R. R. Co.*, 38 S. C., 103, is in point here, together with the other cases herein previously cited. I think, therefore, that the conclusion of this Court should be: "It is the judgment of this Court, that the judgment of the Circuit Court be reversed;" but two of the Justices agreeing with the Circuit Judge, it will be otherwise.

MR. CHIEF JUSTICE MCIVER. I concur in the conclusion reached by Mr. Justice Pope in this case, and only desire to add a few words indicating the difference between this case and that of the *Town of Summerville* v. *Pressley*, 33 S. C., 56, much relied upon in support of the judgment below. In that case, the ordinance there in question distinctly recited that "it is necessary for the protection of the public health of Summerville that the soil should not be cultivated beyond a limited extent," and there does not appear to have been any evidence adduced in that case contradicting such recital. The Court was, therefore, bound to assume, and did assume, that some limitation upon the cultivation of the soil, within the corporate limits of that town, was necessary to the preservation of the public health. In the present case, however, no such fact appears—it is not recited in the ordinance, and there was no evidence that the keeping of a hog in a two-acre lot, not shut up in a pen, was detrimental to the public health. Indeed, the evidence in this case tended to show the contrary, for it is stated in the "Case" that the premises of the appellant had passed the inspection of the health officer. This Court certainly cannot, in the face of common experience to the contrary, and

without any evidence whatever, assume that the mere fact of keeping a hog, not in a small pen, but allowed to run at large in a two-acre lot, would be detrimental to the public health.    Indeed, so far as appears in this case, there is nothing to show that the ordinance in question was passed with any view to the preservation of the public health. The ordinance does not purport to *regulate* the manner in which private property shall be kept or used, but simply *prohibits* the keeping of the kind of property therein specified within the corporate limits of the town of Darlington; and, so far as I can perceive, it might just as well have prohibited the citizens of that town from keeping on their premises in said town a horse, or a cow, or any other domestic animal, or, indeed, any other species of property; and surely an ordinance to that effect could not be claimed to fall within the proper limits of municipal authority.

Without going into any consideration of the other interesting questions so ably discussed in the argument for appellant, it seems to me clear that the municipal authorities of the town of Darlington had no power to pass any such ordinance as that in question here.

MR. JUSTICE JONES.    I think the judgment of the Circuit Court should be affirmed.    I am unable to agree to the proposition so broadly stated in the opinion of Mr. Justice Pope, as one sustained by authority and sound reason, viz: that in order that the police power may be used by either the legislature or a municipal corporation, there must appear affirmatively that its use is reasonable.

The police power being confined to legislation for the public health, the public morals, and the public safety, whether a particular regulation falls within the scope of the police power, is necessarily a judicial question; but, falling within this scope, whether the regulation is reasonable, is not a judicial question.    It is sometimes asserted by courts that a police regulation may be declared void because it is unreasonable, but this view is not sound in my judg-

ment. Courts "cannot run a race of opinions upon points of right, reason, and expediency with the law-making power." No act of a legislature can be declared void or unconstitutional, unless it conflicts with some provision of the Constitution. Nor can any ordinance of a municipal corporation, within the power conferred by the legislature, and not in conflict with the laws and Constitution of the State, be impeached in a court for unreasonableness. A critical examination of cases holding police regulations void because unreasonable, will disclose that the attempted police regulation violated some constitutional guaranty. The right, asserted by some courts, to declare a municipal ordinance invalid because unreasonable, is limited to ordinances passed under the *implied* or *incidental* powers of the municipality. In such cases, I think the true thing is, that such ordinances may be declared invalid only when they are so clearly unreasonable, oppressive, or violative of common right, as to justify a court in concluding that the legislature did not intend to grant such power in the charter. In the last analysis, it is a question of legislative intent and not a question of reasonableness. But, whatever may be the rule in reference to the implied power of a municipality, I think it is clear that when the legislature, having power to authorize, does empower a municipal corporation to pass such ordinances on a specified subject as they deem necessary to promote the particular object, and such ordinances are passed within the power conferred, the courts have nothing whatever to do with the reasonableness of the ordinances. Stated more briefly, a municipal ordinance, within the constitutional grant of the legislature, cannot be impeached in court for unreasonableness. The doctrine of judicial interference with town ordinances on the ground of unreasonableness, has not been affirmed before in this State; on the contrary, our own cases repudiate the doctrine. In *Crossby* v. *Warren*, 1 Rich., 387, the Court said: "The act gives the power to pass by-laws on the subject of streets, health, and good order, subject to the restrictions that they

shall not be inconsistent with the laws of the land and legislative revision. On these subjects, and with these restrictions, their power is unlimited, and if, in their judgment, the hog license to run at large be injurious to the streets or health of the citizens, they have a right to legislate on the subject, and pass laws for the removal or abatement of it as a nuisance." In this opinion all the Court concurred except Judge Wardlaw. He, however, in his dissenting opinion, said: "An apprehension that hogs might become nuisances, in vulgar phrase—that is, troublesome and disagreeable—formed, no doubt, the reason, and perhaps a very sufficient reason, why the council desired to prevent their coming within the corporate limits; of that, as a matter affecting or supposed to affect the welfare and convenience of the village, the council were the judges, and their decision is just as binding, if it be erroneous, as it would be if it were correct, provided they adopted such means to effect their purpose as the charter authorized. Within the range of the subject to which their power of legislating extended, and not opposing the law of the land, their discretion is the rule; they may direct and may prohibit." In *Heissembrittle* v. *City Council*, 2 McM., 236, the Court said: "Such regulations are sometimes apparently tyrannical, but they must be submitted to as necessary police regulations. If they are tyrannical and unnecessary, the popular will can repeal them through the city council, or, if redress should fail there, by appeal to the legislature."

In *City Council* v. *Ahrens*, 4 Strob., 256, the Court said: "This Court, of course, has nothing to do with the policy of the ordinance. It may be very unjust, oppressive, and partial, or it may be one of those wise measures of preservation which experience has rendered necessary to circumvent the cunning of those who look more to private gain than the interest of society." In *City Council* v. *Baptist Church*, 4 Strob., 310, the Court said: "It is sufficient to establish the grant that the power is or may be necessary for the welfare and government of the city. The city council has ex-

clusively the authority to determine when the occasion may exist for its exercise, and the manner in which it should be applied. If an ordinance be exceptionable on these grounds, an appeal against its enforcement lies only to the corporators." In *Town Council* v. *Pressley*, 33 S. C., 61, the Court said: "Assuming for the present that the town council had the power to pass the ordinance, no question can be made whether a 'nuisance' had been created, nor whether the restrictions complained of were necessary to accomplish the purpose in view. It was their exclusive right to judge what was 'necessary and requisite' to preserve the health of the town." The case of *State* v. *Sloan*, *ante*, 21, is in harmony with the foregoing expressions, for the Court declared the city ordinance questioned in that case valid as within the municipal power, not in any wise because it appeared to the Court to be reasonable, for the Court expressly stated that "the question whether the ordinance is reasonable is not before the Court for consideration."

I think the case of *Town Council* v. *Pressley*, *supra*, is conclusive for affirmance in this case. It is impossible, on principle, to distinguish that case from this. I cannot see how the recital in the Summerville ordinance that "it is necessary for the protection of the public health of Summerville that the said soil should not be cultivated beyond a limited extent" differentiates that case from this in which the ordinance in question contains no recital of the reason or necessity for its enactment. Unless there is some law making it essential to the validity of a town ordinance that it contain such recitals, a court is bound to assume that the law-making body thought it expendient or necessary, all this being implied from the mere fact of enactment. Besides, the record before us states that the ordinance in question here is "a *health* ordinance of the town of Darlington, adopted as required by law, and now in force." In the Summerville case, Judge Witherspoon held that the duty of the Court was limited to the inquiry, whether or not the power existed, and, if so, whether or not its exercise

violated any .constitutional provision, and his judgment sustaining the ordinance was affirmed. Justice McGowan, speaking for this Court, quoted with approval from *Harrison* v. *Baltimore*, 1 Gill, 264, the following language: "Of the degree of necessity for such municipal legislation, the mayor and city council of Baltimore were the exclusive judges. To their sound discretion is committed the selection of the means and manner (contributing to the end) of exercising the powers which they might deem requisite to the accomplishment of the objects of which they were made the guardians," &c.

Whatever, therefore, may be the law elsewhere, I think it is settled in this State that a municipal ordinance enacted within the power conferred by a constitutional act, cannot be declared invalid because it is unreasonable. The ordinance in question here is clearly within the legislative grant, and it has not been shown that any constitutional provision has been violated thereby.

But even granting the right of the courts to inquire into the reasonableness of an ordinance, the judgment below ought to be affirmed. Whether a particular ordinance is reasonable, is a question of fact to be determined by the circumstances of the particular town or city, the objects in view, the necessity for its enactment, its tending to accomplish the purpose in view, &c. The evidence must be addressed to the trial court. This is a case at law, and it is well settled that this Court will not reverse the judgment below on a question of fact in a case at law. According to the facts agreed on, Mr. Ward's enclosure wherein the hog was kept embraced about two acres in the town of Darlington; there is no report against Mr. Ward for keeping his premises in an uncleanly condition, which appear to the health officer who examined same to be clean and in proper general condition. The charge against him is for keeping the hog on the premises, in violation of the ordinance. Mr. Ward admits keeping the hog on the premises, but denies the power of the council to pass and enforce the ordinance in question.

It was admitted or stated in the "Case," that the ordinance is a *health* ordinance.   Upon this evidence the Court was asked to declare the ordinance void.   The Circuit Judge disposed of this in the following language: "So here that the hog is properly or cleanly kept is beyond the question. It may be now so kept, and may not be so kept in the future, or it may be so kept in the future.   I can very well understand that, however well and cleanly kept a hog may be, the smell, the noise, indecent exhibitions, &c., may necessitate such an ordinance; this may be emphasized by reason of the levelness of the territory, the probability of smell being circumscribed or confined, or other circumstances showing a prepared and fertilized hotbed for the rapid growth and development of contagion on its sudden removal."   If we had the power, can this Court say upon the evidence that the Circuit Judge erred in finding in effect that the ordinance was reasonable and necessary?   The presumptions are all in favor of the reasonableness of the ordinance.   The burden of showing that the ordinance is not reasonable is upon him who assails it.   What evidence was before the Court to show the ordinance to be unreasonable, sufficient to override the implied fact of reasonableness and necessity arising from the enactment of a health ordinance on the recommendation of a board of health charged with the duty of preserving the public health?   Is the power of town council to preserve the public health to be measured by the size of Mr. Ward's lot?   Does the cleanly condition in which he keeps his premises relate in any way to the question whether the keeping of hogs within the limits of Darlington is or may become prejudicial to the health of the people of the town?

The judgment of the Circuit Court stands affirmed.

MR. JUSTICE GARY concurs with Mr. Justice Jones.