## 11302

### CITY OF COLUMBIA v. ALEXANDER

#### (119 S. E., 241)

MUNICIPAL CORPORATIONS—ORDIANCE PROHIBITING OPERATION OF VEHICLES FOR HIRE WITHIN CERTAIN ZONE, EXCEPT UNDER STATED CONDITIONS, HELD VOID.—An ordinance of the city of Columbia, prohibiting vehicles for hire from operating on Main Street within a designated zone, except to convey passengers desiring to be discharged at a point on Main Street or pick up a passenger within that zone, pursuant to a previous call and requiring a vehicle for hire in such cases to enter Main Street at the corner within the point in question and to leave at the nearest corner, *held* void, being an unreasonable and discriminating interference with constitutional and contractual rights.

*Messrs. Cole L. Blease* and *C. T. Graydon,* for petitioner, cite: *Competent for Court to inquire into reasonableness of City Ordinance:* 39 N. J. L., 38; 78 Mich., 288; 55 Minn., 186; 118 U. S., 356; 14 S. E., 387; 87 S. E., 972; 83 S. C., 372. *Cities have only police power granted to them:* 84 S. C., 488. *Unreasonable restriction of use of streets:* 79 So., 293; 6 A. L. R., 108; 19 R. C. L., 885. *Right in Legislature:* 199 Mass., 542; 199 S. W., 631. *Powers conferred on Columbia by Legislature:* 4 Stat., 751; 6 Stat., 118; 12 Stat., 293; 12 Stat., 614; 12 Stat., 681; 14 Stat., 354; 14 Stat., 569; 16 Stat., 451; 18 Stat., 488; 17 Stat., 47; 18 Stat., 91; 18 Stat., 909; 21 Stat., 678; 21 Stat., 1096; 22 Stat., 646; 23 Stat., 1154; 24 Stat., 1085; 25 Stat., 721. *Rights of State and City in streets:* 69 S. C., 1; 7 S. E., 146; 13 S. E., 567; 2 S. E., 336. *City cannot revoke license:* 6 Rich., 404; 35 L. R. A. (N. S.), 716. *Unless illegally issued or the right reserved:* 75 S. C., 232. *State regulates common carriers and busses:* 32 Stat., 956; L. R. A.

---

NOTE: On questions relating to regulation of jitney busses see notes in L. R. A. 1915F, 840; L. R. A. 1916B, 1156; L. R. A. 1918 B, 912 and L. R. A. 1918F, 475.

On power to prohibit use of automobiles upon public thoroughfares, see note in 1 L. R. A. (N. S.), 219 and 26 L. R. A. (N. S.), 502.

(N. S.), 1915-F, 840; 1916 B., 1156; 1918 B., 912; 1918F., 475.

*Mr. C. S. Monteith* for respondent.

October 2, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

*Habeas corpus* proceedings in the original jurisdiction of this Court for the purpose of testing the validity of an ordinance of the City of Columbia entitled, "An ordinance further regulating traffic of the City of Columbia," adopted March 27, 1923, taking effect May 1, 1923, for a violation of which the defendant was convicted and sentenced on May 3, 1923.

On May 3, 1923, the defendant applied to Hon. R. C. Watts, an Associate Justice of this Court, for writ of *habeas corpus,* which was granted in an order signed by him on that day, required the city jailer of the City of Columbia to produce the body of the defendant before him at Laurens, S. C., on May 5, 1923, at 3 o'clock p. m., in the usual form.

Upon return of the writ, the Associate Justice signed an order referring the matter to the entire Court, to be heard at regular term May 14, 1923, admitting the defendant to bail in the meantime and enjoining the enforcement of the ordinance in question meanwhile. At the appointed time the matter was heard by the Court.

The ordinance in full is as follows:

"An ordinance further regulating traffic of the City of Columbia.

"Be it ordained by the Mayor and the City Council of the City of Columbia:

"That from and after 1st day of May, 1923, it shall be unlawful for any person, firm or corporation operating vehicles for hire in the City of Columbia, to drive or permit the said vehicles to be driven on Main Street between the State House and the Post Office, except for the purpose of discharging a passenger or passengers, or for the purpose

of taking up a passenger or passengers, upon a call previously arranged for, and any entering of said Main Street for the purpose of discharging of said passenger or passengers, or answering said call, the said vehicle or vehicles shall enter Main Street at the corner nearest to the point at which said passenger is to be discharged or taken up, and shall leave said Main Street upon reaching the first corner leading away from said Main Street after having discharged or taken up said passenger or passengers.

"That no person, or persons, shall be allowed to drive any vehicle in the City of Columbia for hire unless and until said person, or persons, shall have filed with the chief of police an application for permission to drive said vehicle which application shall be recommended by at least two responsible citizens of the City and shall be subject to the approval of the mayor and chief of police; that the chief of police and such officer, or officers as he may designate, be, and they are hereby empowered with authority to make stated inspection of vehicles operating for hire in the City of Columbia, with a view of determining their safety and convenience for the transportation of the public, and any vehicle condemned by chief of police shall not be longer operated in the public service.

"That no vehicle shall be operated until the persons, firm or corporation owning the same shall have paid the license, or licenses, provided by the said ordinance for the operation of said vehicle and for the permit to be issued to the driver thereof.

"That any person, firm or corporation violating the terms of this ordinance shall, upon conviction before the Recorder, be fined in the sum not exceeding one hundred dollars, or imprisoned for a period not exceeding thirty days.

"That the chief of police may in his discretion summon any person, firm or corporation violating the terms of this ordinance, as well as the terms of any other ordinance regulating traffic, or any person, or persons refusing to obey the

orders of the police department, before the City Council to show cause why his license to operate vehicles in the City of Columbia for hire, shall not be revoked, and the peson, or persons so summoned shall be given at least three days notice to answer before the City Council.

"Done and ratified under the corporate seal of the City of Columbia this 27th day of March, A. D. 1923. W. A. Coleman, Mayor."

"Attest: G. F. Cooper, City Clerk."

It was admitted by the defendant, upon the trial in the City Court, that at the time alleged he was operating for hire an automobile in the City of Columbia, under a license from the City; that when arrested he was driving his car up Main Street between the State House and the Post Office; that he had no passenger in the car to be discharged at a point on Main Street, and was not expecting to take up a passenger on Main Street upon a call previously arranged for. He came squarely within the inhibition of the ordinance, and if its validity should be sustained, the conviction was proper.

The defendant attacks the validity of the ordinance upon the grounds that it is unreasonable and unconstitutional, in that it deprives him of life, liberty, and property without due process of law, and is discriminatory against him and his business.

The earlier decisions of this Court announce the principle in very broad terms, that once conceding the power of the municipality to pass the ordinance which may be in question, the Court will not inquire into its unreasonableness; as it has been expressed:

"The Judiciary * * * cannot run a race of opinions upon points of right reason and expediency with the law making power."

In *City Council v. Ahrens,* 4 Strob., 241, the Court said:

"This Court, of course, has nothing to do with the policy

of the ordinance. It may be very unjust, oppressive and partial."

"In *City Council v. Baptist Church,* 4 Strob., 306, the Court said:

"In deciding the question of the power of the City Council to pass the ordinance, the necessity or expediency of its enactment has not been considered. That has been assumed. If the power exists, the Court has no jurisdiction to control the discretion of the City Council in its exercise, provided it be exercised consistently with the laws and Constitution of the State."

In *Summerville v. Pressley,* 33 S. C., 56; 11 S. E., 545; 8 L. R. A., 854; 26 Am. St. Rep., 659, the Court said:

"The Town Council, which alone had the right to judge, deemed the ordinance necessary to preserve the health of the town, and we have no right to review that judgment."

To the same effect, practically, are the cases of *Crossby v. Warren,* 1 Rich., 387. *City Council v. Heissenbrittle,* 2 McMul., 236.

The later decisions, however, have greatly modified the sweeping declarations of the earlier decisions, and declare that where the complaint asserts the impairment of constitutional rights, the reasonableness of the ordinance will be inquired into in determining such claim.

In *Thomasson v. R. Co.,* 72 S. C., 1; 51 S. E., 443, the Court said:

"A municipal ordinance within the constitutional grant of the Legislature cannot be impeached in Court for mere unreasonableness. * * * But if attacked on constitutional grounds, the unreasonableness of an ordinance may be considered as a circumstance with a view to ascertain if it really violates some constitutional provision. * * * The ordinance under consideration being questioned for mere unreasonableness in the request to charge, and not because in violation of the constitution, or as void for want of power, a judicial question was not presented and there

was no error in refusing to charge that the ordinance was void because unreasonable."

In the case of *State v. Earle,* 66 S. C., 194; 44 S. E., 781, the proceeding was in prohibition to restrain the City Council from enforcing an ordinance requiring railroad companies whose tracks crossed streets to station a flagman there and to maintain certain lights. The objection to the ordinance, among others, was that it contravened the due process clauses of the Federal and State Constitutions, was unreasonable, unjust, oppressive and burdensome upon the petitioner. The Circuit Judge held, under the Darlington Case. 48 S. C., 570; 26 S. E., 906, and the Ahrens Case, that the ordinance was within the police power of the City, and its unreasonableness would not be inquired into. This Court reversed his judgment holding:

"The next question that will be considered is whether the Circuit Judge, in refusing the order of reference, erred in ruling that the petitioner did not have the legal right to show by testimony that the ordinance is 'unreasonable, unjust, oppressive and a burden upon the petitioner.' " The Court then proceeded to cite authorities, principally from the Supreme Court of the United States and concludes:

"These authorities demonstrate that the petitioner had the right to show by testimony that the ordinance was so unreasonable in its operation as really to be spoliation or confiscation of its property under the guise of legal forms, and that the ruling of the Circuit Judge was erroneous."

In *Brunson v. Youmans,* 76 S. C., 128; 56 S. E., 651, it is said:

"Hence the rule in State and Federal Courts that an ordinance may be declared invalid when it is so unreasonable and oppressive in its operations as to warrant an inference that it violates some right guaranteed by the Constitution."

It is significant that the opinion in this case was written by Mr. Justice Jones (afterwards Chief Justice), who carefully reiterated the general principles announced by him in

the Darlington Case, but qualified the sweeping character of that case by the holding above. quoted.

In *Kirk v. Board,* 83 S. C., 372; 65 S. E., 387; 23 L. R. A. (N. S.), 1188 the Court said:

"It is always implied that the power conferred to interfere with these personal rights is limited by public necessity. From this it follows that boards of health may not deprive any person of his property or his liberty, unless the deprivation is made to appear by due inquiry to be reasonably ' necessary to the public health. * * * To the end that personal liberty and property may be protected against invasion not essential to the public health—not required by public necessity—regulations and proceedings of boards of health are subject to judicial review. * * * In passing upon such regulations and proceedings, the Courts consider, first, whether interference with personal liberty or property was reasonably necessary to the public health, and, second, if the means used and the extent of the interference were reasonably necessary for the accomplishment of the purpose to be attained. * * * If the statute or the regulations made or the proceedings taken under it are not reasonably appropriate to the end in view, the necessity for curtailment of individual liberty, which is essential to the validity of such statute and regulations and proceedings, is wanting, and the Courts must declare them invalid, as violative of constitutional right."

In this last-cited case Mr. Justice Hydrick dissented from certain expressions in the leading opinion and from the judgment, but said:

"If the language above quoted means no more than that the Courts may inquire into the reasonableness or necessity of such regulations and into the manner of their administration, and consider these, in so far as. such inquiry and consideration may serve to enable the Courts to decide whether there is any real and substantial relation between such reg-

ulations and the manner of administering them, and the avowed purpose sought to be attained, and hence whether they are bona fide exertions of the police power, or mere pretenses, under cover of which constitutional rights are invaded, then I think the statement correct."

His statement of the law is perfectly clear and sound when he adds:

"If it does, in fact, in its necessary operation and effect, conflict with the Constitution, then the Courts may hold it void, as being in excess of the power granted, or in violation of the Constitution."

If the case of *Summerville v. Pressley,* 33 S. C., 56; 11 S. E., 545; 8 L. R. A., 854; 26 Am. St. Rep., 659, can be considered authority for the proposition that the matter of reasonableness of an ordinance can under no circumstances be inquired into by the Court, it is singular that the Court should have quoted the following from *Commonwealth v. Alger,* 7 Cush. (Mass.) 85.

"The power we allude to is rather the police power, the power vested in the Legislature by the Constitution, to make ordain and establish all manner of wholesome and reasonable laws, statutes, and ordinances   *   *   *   not repugnant to the Constitution, as they shall judge to be for the good and welfare of the commonwealth and of the subjects of the same."

Or the following from Cooley on Const. Law:

"The judiciary can only arrest the execution of a statute when it conflicts with the Constitution."

In *Darlington v. Ward,* 48 S. C., 570; 26 S. E., 906, the Court said:

"In passing on the validity of an ordinance passed by a town, the Court can only inquire as to the constitutionality of the act delegating the power, and whether the town has acted within the scope of the power so delegated; but the Court cannot consider whether an ordinance is reasonable or necessary."

In the case of *Darlington v. Ward*, 48 S. C., 570; 26 S. E., 906, Mr. Justice Jones, delivering the controlling opinion in the case says:

"The right, asserted by some Courts, to declare a municipal ordinance invalid because unreasonable, is limited to ordinances passed under the implied or incidental powers of the municipality. In such cases, I think the true thing [theory?] is, that such ordinances may be declared invalid only when they are so clearly unreasonable, oppressive, or violative of common right, as to justify a Court in concluding that the Legislature did not intend to grant such power in the charter. In the last analysis, it is a question of legislative intent and not a question of reasonableness."

It is further said in *Darlington v. Ward:*

"Nor can any ordinance of a municipal corporation, within the power conferred by the Legislature, and not in conflict with the laws and constitution of the State, be impeached in a Court for unreasonableness."

However broad the statement contained in the *Darlington v. Ward* Case may be considered, the opinion clearly foreshadows the conclusion subsequently reached by the Court: That the unreasonableness of an ordinance may be so great as to violate constitutional privileges. *State v. Earle*, 66 S. C., 194; 44 S. E., 781. *Thomasson v. Railroad Co.*, 72 S. C., 1; 51 S. E., 443.

It cannot be denied that the enforcement of the ordinance will seriously impair, if not destroy, the defendant's lawful business. Upon its face that appears to have been the purpose of the ordinance.

The defendant is engaged in a lawful business operating an automobile for hire, duly licensed by the City Council of Columbia. It is the means of his livelihood and constitutes a property right, common to all members of the public, to the use of Main Street, exercised in a ligitimate way. The defendant has not only the constitutional right of exercising his energies in the pursuit of a lawful business, but a con-

tractual right under license from the City to operate this particular form of business.

"It may be observed also that with regard to the extent to which the Court will inquire into the reasonableness or the necessity of such a law, the Courts place laws regulating lawful business enterprises in a class separate and distinct from those enacted to protect the public health." Hydrick, A. J., in *Kirk v. Board,* 83 S. C., 378; 65 S. E., 387; 23 L. R. A. (N. S.), 1188.

The terms of the ordinance are peculiar. Adopting the classification of vehicles for hire, in common parlance they are known as "taxis" and "jitneys." A "taxi" is a vehicle, usually of the motor class, the charges for which are a stipulated fare or upon a time or distance basis, not at all in competition with street cars; a "jitney," also of the motor class, the charges for which are much lower, a stipulated fare, usually five or ten cents, directly in competition with street cars. This nomenclature will be herein adopted.

The ordinance applies to both taxis and jitneys alike. Under its provisions such a vehicle cannot enter Main Street, between the designated points, at all, unless (1) it is at the time conveying a passenger who is to be discharged at some point on Main Street; or (2) it has received a call from an intended passenger on Main Street. If it is conveying a passenger to be discharged on Main Street, it cannot enter Main Street except at the corner nearest the point of discharge and must thereafter leave Main Street at the nearest corner; if it has received a call from an intended passenger on Main Street, it cannot enter Main Street except at the corner nearest the point of call, and after taking up the passenger leave Main Street at the nearest corner.

The inevitable and evidently intended effect of the ordinance is to keep taxis and jitneys off of Main Street, to deprive them of the right to the use of a public thoroughfare, except under the conditions stated and under restricted limitations even then.

A driver has no right under the ordinance to the use of Main Street within the prohibited zone, even if he should be carrying a passenger, unless the point of discharge be on Main Street within that zone. The Jefferson Hotel, for instance, is on Main Street, but without the prohibited zone; he would not be allowed to carry a passenger from the Union Depot, up Main Street, to the hotel. If a passenger wished to be carried from a point on the east of Main Street to a point on the west side, the driver could not enter Main Street even for the purpose of crossing it, except beyond the zone. If upon a previous call a passenger should be taken up on Main Street to be carried to the State House, the driver would not be allowed to use Main Street, but must leave it at the first corner and detour one or more. blocks, even if he could be allowed to re-enter Main Street at the Monument. The declared purpose of the ordinance is found only in its title: "An ordinance further regulating traffic of the City of Columbia."

Counsel for the respondent has specifically pointed out no evil condition produced by the operation of the jitney in the prohibited zone. It may be assumed from the quotations from cases cited by him that the evil consists in danger to pedestrians, in congestion of traffic, in collisions with other vehicles. As a matter of fact, the uninhibited use of the street is fraught with less danger than the permitted use. The driver is not allowed to move slowly along the street sweeping the sidewalks with his eyes for a prospective "fare," his speed reduced and his alertness quickened, but is allowed, with a passenger, in haste to discharge him and seek other customers, to race him to destination.

If the operation of jitneys within the prohibited zone is fraught with danger of collisions, it must be due to the presence of other vehicles, street cars and private cars, permitted to use the streets without restrictions. A private car is permitted the use of the street, not only for locomotion, but to be parked with its nose to the curb and its pos-

terior obstructing the line of transportation and the view of persons crossing the street. It is not fair to hold one of the parties producing the peril and freely license the other.

We conclude, therefore, that the ordinance in question is an unreasonable and discriminating interference with the constitutional and contractual right of the defendant, and is void.

The judgment of the Court is that the convictions of the defendant be set aside, and that he be discharged without delay.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and FRASER concur.

MR. JUSTICE MARION: I dissent. With the utmost deference, the conclusion reached is, in my judgment, demonstrably unsound; but, as argumentative elaboration of my views would subserve no useful purpose, I shall content myself with this brief observation. Conceding that the validity of a police regulation is ultimately a judicial question, the premises upon which the decision proceeds are arbitrarily assumed, as I think, in violation of the fundamental and salutary rule that every presumption shall be indulged in favor of the good faith and ordinary common sense of a legislative body; and the conclusion involves, as I apprehend, a radical and dangerous departure from the settled law of this jurisdiction, that where the subject of the regulation is within the legislative jurisdiction and the measure enacted bears any substantial relation to the public safety and convenience or to the general welfare, the reasonableness of a police regulation is entirely a matter for the legislative department of government, and not for the Courts. To foresee the consequences of a departure from that position requires no gift of prophecy.